ISAAC MORRIS V. CATHARINE WARD.

*Error from Shawnee County.*

1. HOMESTEAD: MORTGAGE.—A mortgage of the homestead executed by the husband alone is void.

2. ID: JUDGMENT NO LIEN ON.—A judgment rendered against the husband alone is not a lien on the homestead.

3. ID.—Neither is such a mortgage nor such a judgment any incumberance on land owned by the husband and occupied by himself and family as a homestead.

4. ID: SALE OF.—Such land may be sold and conveyed by the husband and wife jointly, and the purchaser will take the title free and clear from all incumbrances, notwithstanding said mortgage and judgment.

5. ID: EXECUTION SALE.—After said sale and conveyance, and after the land has been abandoned as a homestead, if an execution issue on said judgment and the land be sold under said execution, the sale is void.

6. ID: ORDER OF SALE.—After said sale and conveyance and abandonment, if a decree of foreclosure be entered on said mortgage against the husband in a suit in which the wife is not a party, the decree is void, so far as it affects her interests, and is no evidence of anything as against her.*

The subjoined opinion of the court contains a full statement of the facts of the case.

*Douthitt & Spencer*, for plaintiff in error.

*D. Brockway*, for defendant in error.

*For plaintiff*, it was insisted.

1. The judgments rendered against the husband were liens upon the homestead at the time of the con-

*1. HOMESTEAD: JUDGMENT, etc.—Semble: The lien of a judgment rendered against the husband is not merely suspended upon the homestead during its occupancy.

2. CONSTITUTIONAL LAW.—" Expressio unius est exclusio alterius " applied to the constitutional provision as to the liens that may attach to a homestead. Comp. Laws, '69, § 9.

3. STATUTORY CONSTRUCTION.—§ 2 act of February, 7, '59 [Comp. Laws, 548;] § 432, act of Feb. 11, 1859, [Comp. Laws, 94;] and § 433, act of Feb. 11, 1859 [Comp. Laws, 194] construed.

4. MORTGAGE ON HOMESTEAD.—It seems that a mortgage by the husband on the homestead is void even as against the husband and for all purposes.

5. LIEN.—To obtain a lien upon real estate is to obtain an interest therein, which may in time ripen into a perfect estate, and is an incumbrance upon it.

veyance to Morris. [§ 433, *Civ. Code, Comp. Laws*, 194.] This section makes a judgment a lien against *all* the lands and tenements of the debtor within the county.

2. Section nine, article fifteen, constitution, merely exempts the homestead *while occupied* as such. If the debtor conveys, the grantee takes subject to the liens of judgment subsisting against him. The homestead right is a personal privilege which may be released or abandoned, but it is not transferrable. 26 *Barb.*, 374; 5 *Minn.*, 333; 7 *id.*, 513, 319; 12 *id.*, 60; 3 *Wis.*, 752; 17 *id.*, 590, 308; 15 *id.*, 549; 16 *Texas*, 56; 14 *Cal.*, 506, 472; 16 *id.*, 218, 182; 3 *Mich.*, 448; 2 *id.*, 472; 6 *id.*, 456; 39 *Maine*, 486.

3. The law is designed to secure to the debtor the use and occupation of his house, and when he ceases to use and occupy it, it loses its homestead character and becomes subject to the payment of his debts. 39 *N. H.*, 478; 28 *Vt.*, 544; 9 *Texas*, 630.

4. The mortgage given by Ward to Strickler is a lien on said premises.

The defense that the mortgage premises were the homestead, could only be set up by the mortgagor in the suit to foreclose the mortgage; and failing to set it up at that time, he is as much concluded by the decree therein as if the question had been expressly determined, and the homestead exemption as to him cannot be again adjudicated in this action. 14 *Iowa*, 320; 13 *id.*, 579; 20 *Texas*, 782; 16 *id.*, 56; 13 *id.*, 68; 11 *N. H.*, 501; 16 *Cal.*, 472.

*D. Brockway, for defendant in error*, contended:

1. The land conveyed by the defendant in error and John F. Ward, her husband, to the plaintiff in error, was

the homestead of John T. Ward, and had been used and occupied as such by him and his family continuously from the year 1860 until the 15th day of May, 1867.

The mortgage from John T. Ward to Hiram J. Strickler was made on the 15th day of September, 1866, while the land was occupied as a homestead, and could not be alienated without the joint consent of husband and wife; and the mortgage having been made by the husband alone, was a nullity. *Const. of Kas., Art.* 15, § 9; *Dye v. Mann*, 10 *Mich.*, 291; *Alley v. Bay*, 9 *Iowa*, 509; *Patterson v. Kreig*, 29 *Ill.*, 514; *Best v. Allen*, 30 *id.*, 30; *Pardee v. Lindley*, 31 *id.*, 174; *Richards v. Chase*, 2 *Gray*, 384; *Sargent v. Wilson*, 5 *Cal.*, 504; *Poole v. Gerard, id.*, 71; *Dorsey v. McFarland*, 7 *id.*, 342; *Revolk v. Kramer*, 8 *id.*, 66.

2. The judgment against John T. Ward and Lot P. Patty, recovered on the 20th day of December, 1866, by C. H. Sweeny and Margaret Sweeny, was not a lien on Ward's homestead, and the conveyance by him and his wife to the plaintiff in error, on the 3d day of May, 1867, while the premises were used and occupied as a homestead, invested Morris with the title thereto, free from the lien of the judgment; and no judgment or decree of a court, and no deed to which the wife is not a willing party, can deprive the wife of her homestead, and this right is equally inviolate in spite of creditors or husband. *Lamb v. Shays*, 14 *Iowa*, 567; *Cummings v. Long*, 16 *id.*, 41; *Green v. Marks*, 25 *Ill.*, 221; *Marriner v. Smith*, 27 *Cal.*, 649; *Shattuck v. Carson*, 2 *id.*, 589; *Const. of Kas., Art.* 15, § 9.

3. The judgment could not be a lien upon the land in any way, unless it became a lien by virtue of some statute. At common law a judgment is not a lien upon land. The statute only makes a judgment a lien upon

land "not exempt by law." *Civ. Code*, 1859, §§ 432, 433; *Lamb v. Shays*, 14 *Iowa*, 567; *Green v. Marks*, 25 *Ill.*, 221; *Gen. Stat.*, 708, § 419; 713, §§ 443, 444; 16 *Cal.*, 181; 16 *Iowa*, 41; § 2 *Comp. L.*, 548.

*By the Court*, VALENTINE, J.

Catharine Ward, the plaintiff below, and her husband, John T. Ward, sold and conveyed to Isaac Morris, the defendant below, a certain piece of land and took in payment therefor, a certain instrument in writing, whereby the said Morris promised to pay the said Catharine Ward, $2,150, with interest *on condition* " that the title to the land shall be perfected to the said Morris *free from all incumbrance*, within six months."

Morris claims that the condition on which he promised to pay the money has not been complied with—that the land is still incumbered. Catharine Ward claims that there was no incumbrance on the land at the time that she and her husband conveyed it to Morris, but that they conveyed it to him free and clear from all incumbrance; and the only question presented in this court for our consideration is whether the land was free and clear from all incumbrance at the time it was so sold and conveyed.

The title to the land was in the husband, John T. Ward, and long prior to any supposed incumbrance upon it he and his wife, together with their family, resided upon and occupied the same as a homestead, and they continuously occupied it as a homestead from the time they first so occupied it until after they sold and conveyed it to Morris. During the time that they so occupied said land as a homestead, the husband mortgaged it to H. J. Strickler, and after they sold and conveyed it to Morris and abandoned it as a homestead, Strickler foreclosed

his mortgage by a suit against the husband and Morris in the district court. Also during the time that they so occupied said land as a homestead, a judgment was rendered in the district court in favor of C. H. Sweeney and Margaret Sweeney against the husband, and after said sale and abandonment of the homestead, an execution was issued on said judgment, and the land was sold thereon by the sheriff to John M. Gallagher. The wife was not a party to any of these proceedings. · The question is narrowed down to this, as we think, whether said mortgage or the said judgment was at the time of said sale and conveyance by the said Wards to said Morris any incumbrance on said land; for if the land was at that time, or at any time within six months from the day of sale, free from all incumbrance, then the condition of Morris' promise had been fulfilled, and he became liable for the money. We may, however, incidently consider the effect of the foreclosure decree, and the sale on execution on the land as against Catharine Ward, the plaintiff below.

HOMESTEAD: Liens Upon.    These questions depend entirely upon the construction given to our homestead laws. There are at least two views which may be taken of these laws; one is, that the occupying of a piece of land as a homestead merely suspends the operation of any liens, alienations or incumbrances concerning it, during the time that it is so occupied as a homestead; for instance, that every deed, mortgage or other conveyance of the homestead by the husband alone, and every lien or incumbrance obtained through his act, or against him alone, is as effective and binding upon the homestead as it would be upon any other land, except that its operation is merely suspended while it is so occupied as a homestead; and that as soon as the land ceases to be occupied as a homestead

such deed, mortgage, conveyance, lien or incumbrance, springs full-grown into practical and effective operation; or in other words, that the husband alone, by his own act, may alienate his homestead, as fully and completely as he could any other land, by making a deed, mortgage or other conveyance to it, or by allowing a decree of court to go against him for it, or by allowing a judgment lien to attach thereto, except, however, that such alienation is subject only to the contingency of his continuing to occupy the land as a homestead.. We do not adopt this construction of our homestead laws; we do not believe that the framers of the constitution intended to found the *homestead of the family* upon such a precarious foundation, or to protect it by such slight and fragile safeguards. The homestead was not intended for the play and sport of capricious husbands merely, nor can it be made liable for his weaknesses or misfortunes. It was not established for the benefit of the husband alone, but for the benefit of the family and of society—to protect the family from destitution, and society from the danger of her citizens becoming paupers.

The other view of the homestead laws, and the one which we adopt, is that no incumbrance or lien or interest can ever attach to or affect the homestead, except the ones specifically mentioned in the constitution. *Expressio unius est exclusio alterius.* These are liens for taxes, for the purchase money, for improvements made on the homestead, and liens given by the "joint consent of the husband and wife." No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he alone can do or suffer to be done, can cast the slightest cloud upon the title to the homestead; it remains absolutely free from all liens and incumbrances except those mentioned in the constitution.

ID: CONSTITU-
tional Law.

Our constitution provides [§ 9, *Article* 15] that " a homestead to the extent of one hundred and sixty acres of farming lands, or of one acre within the limits of an incorporated town or city, occupied. as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, *and shall not be alienated without the joint consent of husband and wife* when that relation exists, but no property shall be exempt from sale for taxes or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon; *provided,* the provisions of this section shall not apply to any process of law obtained by virtue of a *lien given by the consent of both husband and wife.*"

ID: STATUTE
Law.

And at the time these supposed incumbrances attached, if they ever attached, the statutes provided [§ 2, *Comp. Laws,* 548] "such exemption shall not extend to any mortgage or any instrument in the nature thereof, lawfully obtained, but such mortgage or other alienation or incumbrance of such land by the owner thereof, if a married man, shall *not be valid without the signature of the wife to the same,* unless such mortgage or other instrument shall be given to secure the payment of the purchase money or some portion thereof."

JUDGMENT LIENS.

Section 432 [*Comp. Laws,* 194] reads as follows: "Lands, tenements, goods and chattels *not exempt by law,* shall be subject to the payment of debts, and shall be liable to be taken on execution and sold as hereinafter provided." Section 433 [*Comp. Laws,* 194] reads as follows: " The lands and tenements of the debtor within the county where the judgment is entered shall be bound for the satisfaction thereof, from the first day of the term at which judgment is rendered, but judg-

ment by confession and judgment rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered. All other lands as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in *execution*."

The whole question in this case probably depends upon the construction given to these sections of the constitution and statute quoted. The question has been decided both ways in other states, (see authorities cited in counsels' briefs,) but as the constitutions and statutes of those states differ from ours, the decisions in those states can have but very little application in this state.

**MORTGAGE ON Homestead.** It seems very plain to us that the mortgage given on the homestead by the husband to Strickler, and not signed by the wife, is absolutely void for all purposes, not binding upon either husband or wife, nor upon any one else; and we are equally clear that no subsequent sale and conveyance and abandonment of the homestead, nor any other act, could by retroaction, breathe into such a mortgage any vitality.

We are also of opinion that no judgment or decree or other legal proceeding against the husband alone can, so far as it affects the homestead, be binding upon either husband or wife, or upon any one else. *Revolk v. Kramer, 8 Cal., 66.*

It is claimed that under section 433, [*Comp. L.*, 194] the judgment creditor obtains a lien on the homestead as well as upon other real estate of the judgment debtor, which may be enforced after the land is abandoned as a homestead, but whether it requires the whole family to abandon it, or only a portion of the family, or the husband alone, we are not told. If we read this section, however, in connection with the next preceeding section

[*Comp. L.,* § 432, 194,] we think it will be seen that it is only such lands, as are not exempt by law, that are subject to the payment of debts upon execution, or upon which judgment liens can attach.   But suppose we give section 433 the construction claimed for it.   Then to obtain a lien upon real estate is to obtain an interest therein, which may in time ripen into a perfect estate, in fee simple.   Such interest is really an incumbrance upon the land, such as is claimed by the defendant below.   If the judgment claimed to be a lien upon the land, is against the husband alone, then it is obtaining an interest in the homestead of the family through the agency— the act or omission—of the husband alone.   It is, so far, an alienation of the homestead by the act or omission of the husband alone, and without the consent of the wife.   Such a construction is in direct conflict with the spirit of the constitution, if not with the letter.

It is not for the interest of society that families should forever remain stationary and their homesteads be perpetual prisons; on the contrary, it is for the interest of society, as well as of families, that families should be free to go, and reside wherever they can do the best.   But if the law·is, as is claimed by the defendant below, then whenever a judgment is rendered against the husband, the family must forever remain where they are at the time such judgment is rendered, or lose not only their homestead, but also the means of acquiring another.   The innocent family and society must suffer, through the improvidence—perhaps the fraud—or the misfortunes of the husband.

It is claimed that the judgment lien remains simply dormant during the time that the land is occupied as a homestead, and that as soon as it is transferred and ceases to be occupied as a homestead, the lien attaches and be-

comes effective.   Now suppose the husband, in whom the
title is, dies.   The title to the property is immediately, by
law, transferred from him to his widow and children, and
he ceases to occupy the property as a homestead, will
the judgment lien then attach and take the homestead
away from the widow and children?   And suppose the
whole family die, except those children born after the
judgment was rendered, can those children hold the
property as a homestead?   If they can, then where is the
certainty of a judgment lien ever attaching to a home-
stead, and becoming effective ?   And as long as the lien
is not effective, it is practically no lien at all.   In the case
at bar, several days before the land was abandoned as a
homestead, and therefore several days before the judg-
ment lien could have any practical existence, the land
was conveyed to Morris.   Then when did this lien at-
tach and become effective ?

Upon the whole, we decide the questions in this case
as follows :

1.   A mortgage of the homestead, executed by the
husband alone, is void.

2.   A judgment rendered against the husband alone
is not a lien on the homestead.

3.   Neither is such a mortgage, nor such a judgment
any incumbrance on land owned by the husband and oc-
cupied by himself and family as a homestead.

4.   Such land may be sold and conveyed by the hus-
band and wife, jointly, and the purchaser will take the
title, free and clear from all incumbrances, notwithstand-
ing said mortgage and judgment.

5.   After said sale and conveyance, and after the
land has been abandoned as a homestead, if an execution
issue on said judgment, and the land be sold under said
execution, the sale is void.

6.   After said sale and conveyance and abandonment, if a decree of foreclosure be entered on said mortgage, against the husband, in a suit in which the wife is not a party, the decree is void, so far as it affects her interests, and is no evidence of anything as against her. We would refer more especially to the following decisions: *Lamb v. Shays*, 14 *Iowa*, 567; *Cummings v. Long*, 16 *id.*, 41; *Revolk v. Kramer*, 8 *Cal.*, 66.

The judgment of the court below is affirmed.

All the justices concurring.