WILLIAM M. AYRES, *et al.,* v. RICHARD PROBASCO.

1. LEADING QUESTIONS—*When Allowable.* Leading questions may some-times be put to a party's own witness; and it is possible that in some cases a court may abuse its discretion by refusing to permit such questions to be asked.

2. PRINCIPAL AND AGENT; *Knowledge of Agent.* Where a transaction is carried on and consummated by one person acting as the agent for another person, whatever comes to the knowledge of the agent pend-ing the transaction, must be presumed to come to the knowledge of the principal.

3. USURIOUS NOTE; *Construction of Statutes.* In an action on a promissory note given in 1871, while ¿ 4 of the usury law of 1868 was in force,

(General Statutes, 526,) said § 4 governs with regard to the forfeiture of interest on usurious contracts, although a subsequent law upon that subject has been passed. (*Jenness v. Cutler*, 12 Kas., 500.)

4. MORTGAGE; *Execution; Signing a "Blank," is a Nullity.* Where husband and wife sign and acknowledge a blank mortgage, with the understanding and agreement that it shall afterward be filled up so as to make it a mortgage on a certain piece of land owned by the wife, and occupied by herself and husband as their homestead, and so as to make it a mortgage to C. to secure the payment of $1,000, and also give authority to a third person to so fill up the blank; and the mortgage is afterward filled up in the presence and with the consent of the husband and said third person, but in the absence and without the knowledge of the wife, so as to make it a mortgage on said property, but so as to make it a mortgage to P. instead of C., and to secure the payment of $1,100 instead of $1,000, *held*, that said mortgage after it is so filled up is not the mortgage of the wife, and is void as to her.

5. STATUTE OF FRAUDS; *Authority to Agent to be in Writing.* Where a party signs and acknowledges a blank mortgage, another person acting as the agent of such party cannot afterward in the absence of his principal fill up the blanks in said mortgage so as to make it the mortgage of his principal, and then deliver the same to the intended mortgagee unless he is authorized so to do by his principal *in writing.*

6. ESTOPPEL; *Void Mortgage.* Where a mortgage was executed in blank as above mentioned, in proposition 4th, to secure a loan of money, and the husband received the money loaned and with it paid off a prior mortgage on the land attempted to be mortgaged by such second mortgage, and the mortgagee through his agent was fully cognizant at the time he parted with his money, and received the mortgage, of the manner in which the mortgage was executed, *held*, that the wife is not estopped from claiming that the mortgage is not her mortgage, and that it is void as to her.

7. HOMESTEAD; *Mortgage of Husband alone, is Void.* And the mortgage being void as to the wife and being on property owned by her and occupied by herself and husband as a homestead, the mortgage is also void as to both the husband and wife. (*Morris v. Ward*, 5 Kas., 239; *Dolman v. Harris*, 5 Kas., 597.)

### THE CASE ON RE-HEARING.

8. DELIVERY OF MORTGAGE; *Mortgagee.* Where an instrument or paper is executed or authorized to be executed to a particular person as mortgagee, and without any authority from and without the knowledge of the mortgagor the name of a wholly different party or person is inserted in such paper or instrument as mortgagee, a delivery of such paper or instrument to the person so named, or

his agent,' by a person to whom such paper or instrument had been intrusted, without the knowledge or consent of the party named as mortgagor, is not a delivery by such mortgagor, and is wholly void.

9. ESTOPPEL—*Not created by Involuntary Benefits.* A party who receives an involuntary benefit, (as, where a wife is benefited by the payment by her husband of a mortgage-lien on the homestead, the title to which homestead is in the wife,) which benefit is so received without such party's knowledge or procurement, is not thereby estopped from denying the validity or legality of a pretended instrument or mortgage used by the party conferring the benefit as the instrument or mortgage of the party so involuntarily benefited, and as a security to obtain the money employed in conferring the benefit, but of the existence of which instrument such benefited party was wholly ignorant.

10. ———— The case of *Knaggs v. Mastin*, 9 Kas., 532, cited, considered, and distinguished.

11. TITLE TO MORTGAGED LANDS, *May be Shown.* Where neither the pleadings nor the mortgage given by husband and wife show in whom the title to the premises is, the presumption, in the absence of proof, is, that the title is in both the mortgagors. But it is competent, to save or determine the rights of either party, to show by proof in whom the title in fact is, whether the husband, the wife, or both.

12. [EQUITY; *Lien on Homestead resulting from certain Acts and Benefits.* It would seem that, where one person advances money with the consent of the owner of a homestead to extinguish some existing lien upon such homestead, with the understanding of the parties that the person so advancing such money shall acquire a lien upon such homestead, such person will in equity acquire such lien to the extent of the money so advanced and so used to extinguish such firstmentioned lien, notwithstanding the instrument claimed to create or to evidence such lien in favor of the party so advancing the money may be void. Per VALENTINE, J.]

13. [STATUTE OF FRAUDS; *Authority to Agent.* The 5th proposition above stated, regarding the authority of agents in certain cases, and the necessity for such authority to be in writing, is again considered by VALENTINE, J.; and the case of *Van Etta v. Evenson*, 28 Wis., 33, commented on, and disapproved.]

*Error from Doniphan District Court.*

PROBASCO brought suit to recover on two notes of $550 each, ($1,100,) executed by *Wm. M. Ayres* to him, and to foreclose a mortgage given by *Ayres* and wife to secure said notes. *Frank Sutter*, as the holder of a second mortgage,

was joined as a co-defendant. Afterward the court ordered W. L. Challiss made a defendant. Each defendant answered separately. *Ayres* and wife each pleaded that $100 of the notes was usury, and denied the execution of the mortgage, but specially admitted that they executed a "blank mortgage" for the purpose of procuring a loan of money from said Challiss for $1,000. The blanks in this mortgage were afterward, in the presence of *Ayres*, but in his wife's absence, and without her knowledge or consent, filled with *Probasco's* name, and the sum of $1,100, and it then was delivered to Challiss as agent instead of as principal. *Mrs. Ayres* made her husband's answer a part of hers, and he the same with her answer, and both asked for affirmative relief, that said supposed mortgage be adjudged and decreed to be null and void, and that the record thereof be canceled. The mortgage does not, nor does either answer show or aver in whom was the title to the mortgaged property. Other facts appear in the opinion, *infra*. The district court, at the September Term 1873, gave judgment in favor of *Probasco* for the recovery of the $1,100 and interest, and for the foreclosure of the said mortgage, and also found in favor of *Sutter* for the amount claimed by him, and decreed a foreclosure of the mortgage held by him as a second lien on the premises, adjudging the same to be subsequent to the lien of *Probasco's* mortgage. From such judgments and decrees *Ayres* and wife and *Sutter* appeal, and bring the case here on error.

*Everest & Greenwood, A. Perry,* and *B. O'Driscoll,* for plaintiffs in error:

1. The court erred in submitting to the jury the following questions, and receiving their answers thereto, to-wit:

*Ques. No.* 10.—"Did defendants Wm. M. Ayres and Melissa T. Ayres obtain and apply to their use and benefit the proceeds of such loan?—(the loan from Probasco.)" *Ans.*—"Yes."

*Ques. No.* 17.—"Did Mrs. Ayres after learning the facts of such loan consent to the using the proceeds thereof for the benefit of herself and husband?" *Ans.*—"Yes."

Question No. 10 was improper and prejudicial to the rights of Mrs. Ayres. If the question was submitted for the purpose of sustaining the execution of the mortgage on the ground of any equitable estoppel as against her, it should have been submitted as to her alone. There was no evidence upon which question No. 17 could have been submitted, as there is no proof that Mrs. Ayres ever knew the facts in reference to this transaction, or that any part of the money passed into her hands, or that she ever used the same.

2. The jury found specifically that the name and place of residence of Probasco were inserted in said mortgage on the 6th of December 1871, at the office of W. W. Guthrie, in the city of Atchison. And the court erred in refusing to submit to the jury for their answer the following questions of fact, prepared and presented by defendants below, to-wit:

*Ques. No.* 32.—"Was the defendant Melissa T. Ayres present at the time the name of Richard Probasco was written in or inserted in said mortgage? and did she have any knowledge thereof, or consent thereto?

*Ques. No.* 34.—"Was the defendant Melissa T. Ayres the owner in her own right of the mortgaged premises mentioned and set forth in plaintiff's petition, at the time the said mortgage is claimed to have been signed, executed and acknowledged by said Melissa?

*Ques. No.* 38.—"What is the value of said notes of Loyd McNamee transferred by defendant Wm. M. Ayres to plaintiff, or to defendant Challiss his agent?

*Ques. No.* 39.—"Did defendant W. L. Challiss, in making the loan of money to defendant William M. Ayres, in accepting and receiving the notes and mortgage set forth in plaintiff's petition, and in taking and receiving the notes of said McNamee, and in the receiving the said deed from defendant Wm. M. Ayres, and in the whole transaction between the plaintiff and defendant Wm. M. Ayres act as the agent and attorney of said plaintiff?

*Ques. No.* 41.—"What was the consideration paid, for which the said two notes were executed which are sued upon in this action?

*Ques. No.* 42.—"Did the defendant Melissa T. Ayres ever execute or deliver to the plaintiff the mortgage mentioned and set forth in the plaintiff's petition?

*Ques. No.* 43.–"Was said mortgage ever in any manner by said Melissa delivered to the plaintiff?"

These propositions or questions were proper, and specific answers thereto were necessary to enable the jury or the court to correctly determine the rights of Mrs. Ayres.

3. The court erred in refusing instruction No. 1, asked for by the defendants. The statutes in force at the time the alleged contract was made provided that any person contracting, by promissory note, etc., to receive a greater rate of interest than twelve per centum per annum, "shall forfeit *all* interest and shall recover no more than the principal." Gen. Stat., ch. 51, §§ 2, 4. The notes in question bear date December 1st, 1871, and were signed December 6th. The district court erroneously held that the contract in the case at bar was governed as to the usury question by ch. 134, laws of 1872, p. 285; that is, the court held that the law in force at the time of the commencement of the action should govern, and not the one at the time the contract was made.

4. It was also error to refuse the following instruction, asked by defendants:

"If the jury find from the evidence that, at the time the defendant Melissa T. Ayres signed said mortgage mentioned and set forth in plaintiff's petition, said mortgage was in blank, and contained no name or person as mortgagee, and thereafter, and without the written authority, direction or consent of the said Melissa, the defendant Challiss, or any other person, in the absence of the said Melissa, and without her knowledge, inserted the name of the plaintiff as mortgagee therein after the same had been signed and acknowledged by her, that the said mortgage is invalid and void as against the said Melissa T. Ayres."

Under the statutes of this state an agent could not insert the name of the mortgagee in the instrument, much less fill up the entire blank in the absence of Mrs. Ayres, unless he had *authority in writing* so to do. Statute of Frauds, Gen. Stat., ch. 43, p. 505; 41 Cal., 85; Story on Agency, § 49; 2 Johns., 430; 9 Allen, (Mass.) 387; 19 Iowa, 273; 24 N.Y., 230; 14 Geo., 173; 1 B. Monroe, 199; 5 How., (Miss.) 71; 4 Kent, 462; 19 Ala., 114; 29 Ill., 306; 33 Texas, 139;

8 Blackf., 413; 14 Wis., 631; 12 Am. Law Reg., (N.S.) 689, and note, 711; 23 Grattan, (Va.) 600.

But if we concede for the purpose of the argument, that parol authority alone was sufficient, then, certainly, the court erred in refusing the following instruction asked by defendants below, to-wit:

"If the jury find from the evidence that at the time defendant Melissa T. Ayres signed and acknowledged the said mortgage the same was in blank as to the name of mortgagee, or the amount or consideration thereof, and after the same had passed out of the possession or control of said Melissa, and in her absence, and without her consent or authority, the name of the plaintiff was inserted therein as the mortgagee, or the amount or consideration thereof was inserted therein, and delivered to the plaintiff or his agent in the absence of the said Melissa, then said mortgage is invalid and void as against her."

This instruction is undoubted law, and to refuse it was obvious error. The mortgaged premises were the *homestead* of the parties. Hence it was also error to refuse the instruction asked for —

"That if the instrument, after it passed out of Mrs. Ayres' possession and control, and in her absence, and without her consent and authority, was filled up, then it constituted *no lien on the premises.*"

This error affected the material rights of the defendants in the court below. The mortgage was not the act or deed of *Mrs.* Ayres, and hence there was no "joint consent" to the alienation. 5 Kas., 239, 597.

*W. W. Guthrie,* for defendant in error:

1. Can a *mortgage*, when executed in blank, and placed in the hands of an agent on which to negotiate a loan, and thereon he fills it up within the line of his authority, and delivers it a perfect instrument in a *bona fide* transaction, be sustained? We assert the affirmative. A mortgage does not convey a *title*, but only creates a lien: 2 Kas., 391; 6 Kas., 397; 8 Kas., 502; 12 Kas., 223. A mortgage is not an *alienation* in this state, but is commercial paper as the

auxiliary of the note: 8 Kas., 465. Hence the authorities regarding *alienations* are inapplicable in this case.

2. Instruments take effect upon delivery, and in the condition when delivered: *Knaggs v. Mastin*, 9 Kas., 550; *Simms v. Hervey*, 19 Iowa, 296; *Basford v. Pearson*, 9 Allen, 387; *Upton v. Archer*, 41 Cal., 87. In these cases it was held that parol authority was not sufficient within the statute of frauds *in the absence of the grantor*. Why not in his absence, when performed in strict accordance with his intention? But in this case Wm. M. Ayres was present, and no *issue* in the case warranted any finding that Melissa T. Ayres was the owner of the mortgaged premises, and all such evidence was received against our objection. In *Chesney v. Arnold*, 24 N. Y., 333, and *Drury v. Foster*, 2 Wall., 33, parol authority is sustained. In *Simms v. Hervey*, 19 Iowa, 297, such authority is not denied; and even in case of a deed, in *Fletcher v. Manseer*, 5 Ind., 269, it is held that the proof may be made *aliunde*. The case of *Preston v. Hull*, 199 of 12 Am. Law Register, is against us, but it fails from the volume of its own weight. A decision of a Virginia court at this day, made by three judges against three judges, will hardly be held to overturn the respectable authorities cited in the editor's note to that case, or to impair the reasoning of his conclusions. But in *Devin v. Heiner*, 29 Iowa, 299, the doctrine contended for by plaintiff in error is completely refuted, and the exception stated in *Simms v. Hervey*, supra, held applicable in a case where the grantee's name in a *deed* was filled in after delivery to the grantee, and the deed held valid and complete. But the doctrine as applicable to a mortgage is directly affirmed in *Van Etta v. Evenson*, 28 Wis., 33. And all the authorities agree that where a party is *competent to ratify*, and does ratify, that the deed is valid, and such ratification may be proved by parol.

But if a *conveyance of title* by Mrs. Ayres was claimed, the law of estoppel would apply and defeat her defense, even in case of a homestead: *Knaggs v. Mastin*, supra; 14 Ohio St., 454; 15 N. Y., 47. But here this very property was under

mortgage, and about to be sacrificed at sale on foreclosure, and the money raised on this loan was used to pay off such prior mortgage. Now, Ayres and his wife claim the right, (or more properly the second mortgagee Sutter does,) to say that Probasco has no lien, because when this mortgage was sent out on its mission for their relief, it was not known from whom the relief was to come, and that, although the relief was afforded by Probasco, just as desired, was accepted and used by the Ayres, and the Symns mortgage thereby extinguished, that he shall lose his money in order that Ayres and wife may mortgage the place to Sutter.

3. On the question of usury. The notes were given in December 1871, and payable in one and two years. The amount of *principal* specified in the notes was $1,100, and the rate of *interest*, 12 per cent. In December 1871, the law of 1868 (ch. 51 of Gen. Stat.,) was in force. On June 20th, 1872, §§ 2, 3, 4 were repealed without any saving clause, and a new rule of recovery established. (Laws of 1872, p. 284.) It was claimed that only $1,000 was in fact loaned, and that the extra $100 was for compensation to Challiss for his services in raising the money. If so, there was no usury: 14 Conn., 594; 30 Conn., 178; 38 N. Y., 281. The repeal in June 1872 was constitutional, and the law of 1872 governed, as held by the district court: Cooley Consti Lim., 374; 28 Conn., 101; 7 Blackf., 474; 18 Ind., 258; 15 N. Y., 151.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on two promissory notes and a mortgage. The notes were executed by William M. Ayres alone. The mortgage was executed (as it appears upon its face) by both Ayres and his wife, Melissa T. Ayres, and both the notes and the mortgage were executed to Richard Probasco. Probasco was the plaintiff in the court below, and Ayres and wife, Frank Sutter, and W. L. Challiss were the defendants. The defendant Ayres and wife set up as defenses to the action that the notes were usurious, and the mortgage was void. The

Statement of facts.

transactions connected with the execution and delivery of said notes and mortgage were, so far as they are necessary to be stated, substantially as follows: Mrs. Ayres owned, and she and her husband occupied as a part of their homestead, the W.½ of the S.E.¼ of section 18 in township 4, of range 21 east, in Doniphan county, less ten acres out of the southwest corner of said land. Said land was mortgaged to one A. B. Symns, who was foreclosing his mortgage in the district court of Doniphan county, and the land was about to be sold to satify said Symns' mortgage. B. O'Driscoll was the attorney for Ayres and wife in said foreclosure suit. In order to save their land from being sacrificed, Ayres and wife concluded to try to borrow the money and pay off the mortgage. O'Driscoll acted as their agent in attempting to procure and negotiate the loan. He had an interview with W. L. Challiss, of Atchison, about the matter, and from what transpired they all expected to borrow the money of Challiss. They expected to borrow $1,000, and to pay interest thereon at the rate of fifteen per cent. per annum. O'Driscoll furnished an ordinary printed blank mortgage, and Ayres and wife signed and acknowledged the same before E. W. Stratton, a justice of the peace of Doniphan county. O'Driscoll and Ayres then took said blank mortgage to Atchison, and went to the office of said W. L. Challiss. Challiss however was not loaning money for himself, but was loaning money for Richard Probasco, of Maryland. He required a greater rate of interest than fifteen per cent. per annum. O'Driscoll and Ayres finally agreed to the terms proposed by Challiss, and Ayres executed his two promissory notes which read as follows:

"$550.00.                ATCHISON, KAS., Dec. 1, 1871.

"One year after date I promise to pay to Richard Probasco, or bearer, five hundred and fifty dollars, value received, payable at Exchange Bank, with interest at 12 per cent. per annum from date until paid, and payable semi-annually.

                              "WILLIAM M. AYRES."

The other note is precisely the same as the above, except that it is made payable in "two years after date," instead of in one. The two notes together amounted to $1,100. O'Dris-

coll and-Challiss then filled up the said blank mortgage so as to make it correspond with said notes, and so as to make it a security for the payment of said notes, O'Driscoll doing the principal part of the writing. They filled up the blank for the description of the land with the same land that had prior to that time been mortgaged to Symns; and they made Probasco the mortgagee. · The notes and the mortgage were then delivered to Challiss, as the agent of Probasco, and in consideration therefor Challiss paid Ayres $1,000, and only $1,000. Ayres, being present all the time, agreed to all that was done,· and ratified and confirmed the same. He therefore has no right to raise any question of *mere irregularity* in the execution of said mortgage. But the question of the execution of said mortgage is one of power, and not a question of *mere irregularity*, as we shall presently see. After Ayres received said money from Challiss he paid off the mortgage to Symns therewith. The notes and the mortgage to Probasco are the instruments upon which the present suit is brought.

Ayres and wife now claim that said mortgage is void, and that said notes are tainted with usury, and these are the main questions in the case. It is true that a vast number of other questions are raised, but they are mainly technical and frivolous. For instance, the first question raised, (both in this court and in the court below,) is upon the ground that the court below allowed the plaintiff to ask O'Driscoll a leading question. Five such questions are raised in this court, and seven such questions were raised in the court below. Indeed, the defendants even objected to the plaintiff asking the defendant Ayres a leading question, although it was asked in a legitimate cross-examination of said Ayres. We have already stated something of the connection which O'Driscoll had with the transactions out of which this cause of action arose. O'Driscoll was also the attorney for Ayres and wife in this case in the court below. He was called as a witness for the plaintiff below. He did not show himself to be a "fast witness" for the plaintiff, but on the contrary plainly showed himself to be obviously the

1. Leading questions, when allowable.

13—14 KAS.

reverse. Yet notwithstanding all this, seven different questions that were put to him by the plaintiff were objected to by the defendants on the ground that they were "leading." Some of them *were* leading; but still there was scarcely the remotest possibility that the witness could be led, either from inclination on his part or from inadvertence, into testifying too favorably for the plaintiff. His evidence abundantly shows this. The court therefore did not err in permitting leading questions to be put to him. Indeed, it possibly would have been an abuse of judicial discretion if the court had refused to permit such questions to be asked.

We will now pass from the many immaterial and unsubstantial questions raised by the defendants below to the more material ones. The whole of the transactions out of which this cause of action arose, were carried on and consummated on the part of Probasco through his agent Challiss. Therefore, whatever came to the knowledge of Challiss, pending the negotiations for said loan, must be presumed to have come to the knowledge of Probasco. Notice to the agent is notice to the principal, in such a case. *Greer v. Higgins,* 8 Kas., 519; 1 Parsons on Contracts, 74. And delivery of the notes and mortgage to Challiss, was delivery to Probasco. Challiss was really standing in the place of Probasco in every particular.

*2. Knowledge of agent, is knowledge of principal.*

Were said notes usurious? Certainly they were. Only $1,000 was loaned, although the notes were given for $1,100. And while under our statutes the highest rate of interest allowed to be contracted for is only twelve per cent. per annum on the amount of the debt or loan, yet in this case interest at the rate of twelve per cent. per annum was contracted for on an amount greater than the amount loaned. Twelve per cent. interest on $1,100 is more than twelve per cent. interest on $1,000. Twelve per cent. interest on $1,100 is equal to thirteen and two-tenths per cent. interest on $1,000. In 1871, when these notes were executed, all interest was forfeited if the parties contracted for more than the highest

*3. Usurious notes and contracts. What statute governs.*

rate of interest allowed by law. (Gen. Stat., 526, ch. 51, § 4.) And the laws in force when these notes were executed is the law that now governs, although a subsequent law (Laws of 1872, page 284,) has been passed by the legislature. (*Jenness v. Cutler*, 12 Kas., 500, 510 to 512.)

Is said mortgage void? We are reluctantly compelled to answer this question in the affirmative. Mrs. Ayres never executed said mortgage. She signed and acknowledged a paper, but this paper in legal effect was nothing. It was just such a blank mortgage as may be purchased at almost any printing office for a few cents. At the time she signed and acknowledged the same she had never heard of Richard Probasco. She did not expect the mortgage to be so filled up as to make him the mortgagee. Nor did she expect to have it filled up so as to make it a security for the payment of any sum greater than $1,000. She expected to have the mortgage filled up so as to make W. L. Challiss the mortgagee, and so as to secure the payment of just $1,000. This it may be said she authorized to have done. But even this authority was given by her only by parol. She never authorized in writing any portion of said mortgage to be filled up. It was therefore not her mortgage, when filled up. An estate in land is usually transferred by deed. An interest in land less than an estate may probably be transferred by a simple contract in writing. But no interest in land, if it is to continue for more than one year, whether it be an estate or less than an estate, can be transferred except in writing or by operation of law. (Statute of Frauds, Gen. Stat., 505, ch. 43, § 5.) And if the transfer is to be made through an agent, the agent must be authorized in writing; (*Id.*) It is true, an owner of real estate may by parol authorize an agent to make a simple contract concerning such real estate which will bind the owner personally; (*Rottman v. Wasson*, 5 Kas., 552;) but in such a case no interest in the land is transferred from the owner to the agent, or from the agent to the person with whom the agent contracts. No interest in the land passes

*Margin notes:* 4. Mortgages. Executing a "blank mortgage," a nullity. 5. When authority to agent to be in writing.

from the owner to any one, and the person with whom the agent contracts gets no interest in the land. If the contract is broken by the owner, the remedy of the other party is an action against the owner personally, either for the specific performance of the contract, or for damages. There is a vast difference between authorizing an agent to transfer an interest in land, and authorizing him to make a contract which will have the effect to compel the owner of the land personally to transfer at some future time such interest. The agent cannot be authorized to do the first by parol: (see said § 5 of the Statute of Frauds.) But he may be authorized to do the second by parol: (*Rottman v. Wasson*, supra.) Now, a mortgage of real estate, although it may not be technically an estate in land, yet it certainly is an interest in land. It is in form a conveyance, and is in fact a lien that may be paramount to any subsequent conveyance, lien, or incumbrance. It is an incipient and conditional alienation of the estate that may eventually overturn and destroy the homestead interest of the mortgagor, and may wholly absorb and swallow up every other right or interest which he may have in the mortgaged premises. It is indefinite in its duration. It is co-existent and co-extensive with the debt which it is made to secure; and nothing but the extinguishment of the debt will destroy it. In the present case, one of the notes which the mortgage was made to secure, was to run *two years* before it became due. Therefore, as a mortgage of real estate creates an interest in the land of indefinite duration, even if Mrs. Ayres had authorized O'Driscoll or her husband *by parol* to fill up said blank mortgage, as it afterward was filled up, the authority would have been void. Upon this proposition the authorities in the different states are conflicting; or at least, the law upon this subject is different in the different states, as shown by the decisions thereof. But the great preponderance of authority, both in this country and in England, lays down the doctrine as we have stated it. See the following authorities: *Burnes v. Lynde*, 6 Allen, 305; *Preston v. Hull*, 23 Grattan, 600; *People v. Organ*, 27 Ill., 27; *Ingram v.*

*Little,* 14 Geo., 173; *Upton v. Archer,* 41 Cal., 85; *McMurtry v. Frank,* 4 Monroe, 435; *Cummins v. Casserly,* 5 B. Mon., 75; *Williams v. Crutcher,* 5 How., (Miss.) 71; *Mosby v. State of Ark.,* 4 Sneed, (Tenn.) 324; *Graham v. Holt,* 3 Iredell (N.C.) Law, 300; *Byers v. McClanahan,* 6 Gill & J., 250; *Blood v. Goodrich,* 9 Wend., 68; 12 Wend., 525; *Worrell v. Munn,* 5 N.Y., 229, 239; *Cross v. State Bank,* 5 Pike, (Ark.) 525; *Ayers v. Horness,* 1 Ohio, 368; *Perminter v. McDaniel,* 1 Hill, (S.C.) 267.

Is Mrs. Ayres estopped from denying that said mortgage is her mortgage? We think not. This case is obviously

6. Estoppel; void mortgage.
dissimilar from the case of *Knaggs v. Mastin,* (9 Kas., 532, 548, *et seq.*) It may be just as immoral for Ayres and wife to claim that their mortgage is void, as it was for Knaggs and wife to claim that their deed was void; but still there are distinctions between the two cases which render them very dissimilar from each other. The instrument in this case was not filled up as Mrs. Ayres had directed that it should be filled up, while the instrument in the other case was filled up just as Mrs. Knaggs had directed. And the mortgagee in this case, through his agent Challiss, was perfectly cognizant of all the facts connected with the execution of the mortgage at the time the mortgage was delivered to him, and at the time he parted with his money, while the grantee in the other case was wholly ignorant of all the irregularities in the execution of said deed at the time the deed was delivered to him, and at the time he parted with his money, and for a long time afterward. Both Mrs. Ayres and Mrs. Knaggs enjoyed the benefit of the money, or a portion thereof, procured by means of their respective instruments, and in this respect only (so far as any foundation for equitable estoppel is concerned,) are the two cases similar. But merely enjoying the benefit of money, procured irregularly and wrongfully, is not of itself a sufficient ground upon which to found an equitable estoppel, so as thereby to make what would otherwise be a void deed or mortgage a valid instrument. A party invoking the aid of

estoppel must himself show that he has been vigilant and careful in the protection of his own rights and interests. Where a person negligently or knowingly puts it within the power of some other person to swindle and defraud him, and he is thereby swindled and defrauded, he is generally allowed to suffer the consequences of his own negligence and folly. Neither the courts nor the law can undertake to protect men of sound mind from all the consequences of their own negligence and follies. The rule of estoppel *in pais* will be found stated in the case of *Clark v. Coolidge*, 8 Kas., 189, 196. Mr. Probasco ought to have said, through his agent Challiss, when O'Driscoll and Ayres desired to borrow said money from him, and offered to deliver said mortgage to him, "I know that mortgage is void, as a mortgage of Mrs. Ayres; I will therefore not receive it. You must furnish me a better mortgage if you want the money."

If said mortgage had been on the property of Ayres, and on any other property than the homestead of Ayres and wife,

7. Homestead; mortgage of husband alone.

it would have been valid as to Ayres, although void as to his wife. But this mortgage was on the property of Mrs. Ayres, and on property occupied as the homestead of herself and husband. Is the mortgage therefor valid as to Ayres, (the husband,) or is it absolutely void? We think it is absolutely void. (Const. of Kas., art. 15, § 9; *Morris v. Ward*, 5 Kas., 239; *Dollman v. Harris*, 5 Kas., 597.) A mortgage is a contingent alienation of the mortgaged premises. It is a lien thereon that may finally engulf and swallow up the whole estate. And such alienation can only be effected, and the lien created, by the joint consent of the husband and wife. (Const., art. 15, § 9, and cases above cited.) Now as Mrs. Ayres did not give her consent to said mortgage, it is void as to her; and being void as to her, it must also necessarily be void as to her husband, there being no *joint consent* of the husband and wife. This virtually leaves Probasco without any security on his notes, so far as the case is now presented to us. It is true, that Challiss received from Ayres, as collateral security, two other

notes, given by Lloyd McNamee to Ayres on the purchase by McNamee of another portion of the Ayres homestead, which notes were merely delivered to Challiss without indorsement. (*McCrum v. Corby*, 11 Kas., 465, 470.) And as Ayres and wife had never made a deed to McNamee for the premises, Ayres made a deed to Challiss therefor, in order to enable Challiss to make a deed to McNamee for the premises, and then to collect the McNamee notes. But as this deed was executed by Ayres alone, and for a portion of his homestead, it was also void. And as Ayres and wife now refuse to make a good deed to either Challiss or to McNamee, or to any one else on said sale to McNamee, said collateral security may not be worth very much. As McNamee was not made a party to this suit, and as there has not been any sufficient showing as to whether Ayres *and wife* could be compelled to make a good deed for said premises to McNamee, we cannot tell whether Challiss and Probasco may have said premises sold to satisfy the McNamee notes and the proceeds thereof applied in payment or part payment of the notes given by Ayres to Probasco. (*Stevens v. Chadwick*, 10 Kas., 406.) The only judgment that could be rendered in this case in favor of Probasco, as the case is now presented to us, would be a personal judgment against William M. Ayres for the amount of the first note, without interest. Perhaps however, upon a second trial, with the pleadings amended, and other evidence introduced, and other findings made, other and additional relief may be granted to the plaintiff Probasco.

The judgment of the court below will be reversed, and cause remanded for a new trial.

KINGMAN, C. J., concurring.

BREWER, J.: I concur in all the propositions of the syllabus except No. 5, and also in the reversal of the judgment; but it seems to me, that the principles of the case of *Swift v. Kreamer*, 13 Cal., 526, are applicable here, and should control the future disposition of this case.

THE CASE ON RE-HEARING.

THE foregoing opinion was filed Jan. 19th 1875. A motion

was made by defendant in error, *Probasco*, for a rehearing. Said motion was heard and submitted at said term. Said motion was argued orally by *W. W. Guthrie*, on the part of *Probasco*, defendant in error. The points stated in his brief are sufficiently stated in the following opinion, overruling said motion, which was filed June 29th, 1875:

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error moves the court for a rehearing in this case. And in his brief and oral argument urges many reasons why he thinks a rehearing should be granted. Among his reasons are these—that the court has mistaken the facts of the case; the court has mistaken the law; the decision was by a divided court; the principal question in the case had been settled otherwise, in the case of *Knaggs v. Mastin*, (9 Kas., 532;) Mrs. Ayres by her subsequent acts has ratified the mortgage sued on, and is now estopped from claiming that it is not her mortgage, or that it is void, etc. We shall consider the principal reasons he offers for a rehearing, as we pass along. That Mrs. Ayres executed nothing but an ordinary "blank mortgage," there is not the slightest room for controversy. All the evidence upon the subject, and the findings of the jury, incontrovertibly show it. On December 5th, 1871, O'Driscoll procured an ordinary blank mortgage and handed it to E. W. Stratton, the justice of the peace before whom the acknowledgment was taken. Said justice then took this blank mortgage to the farm of Ayres and wife, and then and there took their signatures and acknowledgment, and then returned the blank, with merely said signatures, and the acknowledgment filled up, to O'Driscoll, at his office in Doniphan, Doniphan county. Mrs. Ayres never saw the instrument afterward. On the next day, December 6th, Ayres and O'Driscoll went to Atchison, Atchison county, when and where the transactions out of which this action arose were finally consummated. They took with them said blank mortgage. The facts so far are incontrovertible.

We shall now quote from the evidence what some of the principal witnesses say with regard to the transactions at Atchison. W. L. Challiss among other things testifies as follows:

"When I first saw the mortgage, the name 'Richard Probasco' was not in it. W. W. Guthrie was present. He was acting as my attorney. '$1,100' was not in it. O'Driscoll wrote this. The name of Richard Probasco was written in it afterward. Mrs. Ayres was not present. Don't know that Mrs. Ayres knew that $1,100 was written in it. All was filled up over the acknowledgment except 'Richard Probasco of the state of Maryland,' 'eleven hundred dollars,' and 'eleven hundred dollars, payable in one and two years with interest at the rate of 12 per cent. per annum semi-annually payable.' I think the word 'his' in the 8th line is in Mr. Guthrie's handwriting. Also the word 'two' in the 21st line of the mortgage. Also the letter 'y,' in the 23d line; and the letter 'y,' and the word 'his,'" in the 24th line, are in Mr. Guthrie's handwriting, and perhaps some other letters and words. The words, 'of the county of Atchison, and state of Kansas,' were not stricken out of it when I first saw it. They were stricken out afterward I think, by myself. Mrs. Ayres was not present. I had no authority from her to change this mortgage."
\* \* \* "Richard Probasco lives in Maryland. I was acting as his agent. Guthrie wrote the words, 'Richard Probasco of the state of Maryland,' in the office on the 6th of December 1871, after negotiations for the loan were effected, and papers filled up and executed. 'Richard Probasco of the state of Maryland,' was written in by Guthrie, and the words 'of the county of Atchison, and state of Kansas,' were erased by me. I first saw O'Driscoll and Ayres on the 6th of December, about this matter, after dinner, about 2 o'clock, when the matter was all arranged. The money was paid in my office in Atchison. After negotiations had been concluded, I took the mortgage to Guthrie to be examined. He inserted the words, 'Richard Probasco of the state of Maryland,' and made some other slight alterations. I returned the mortgage back to O'Driscoll, and he delivered it back to me after the money was paid, along with the notes."

O'Driscoll testifies —

"The mortgage was not after it was filled up ever sent back to Mrs. Ayres. When I delivered it to Challiss, it *was*

*certainly in blank except the acknowledgment, and perhaps the date and the signatures.*" [This has reference probably to the first delivery of the mortgage to Challiss. What follows has reference to the last and final delivery:] "The name of Richard Probasco was not in it when I delivered it to Challiss. The amount was put in after I made the formal delivery. It was not passed back to me after the name of Probasco was inserted in it. It never came back to me. Challiss took the mortgage with the full knowledge that the grantee's name was not in it. I never directed Guthrie to write the name in the mortgage, nor was it done in my presence." * * * "I never had the mortgage in my hand after the '$1,100' was inserted. I am not sure the '$1,100' was put in after Challiss went to dinner, but I am sure Probasco's name was not in it while Challiss was gone to dinner. Challiss asked to take the mortgage and have it examined by his attorney. After dinner he produced the mortgage, and laid it on the table with the quitclaim deed. When the notes were drawn up and the papers signed, I delivered the mortgage *not filled up as now.*"

William M. Ayres testifies:

"It [the mortgage] has never been in my hands nor under my control since it was taken from my house by Stratton. This mortgage was never under my control after acknowledgment by Stratton. Don't know who filled up the mortgage. Don't think I ever saw it after acknowledgment."

From the circumstances of the case we would think that Ayres must have at least seen the outside of the mortgage after the acknowledgment was taken, that he must have been informed as to what it contained after it was filled up, and that he must have assented to it. The evidence however is conclusive that *Mrs. Ayres* never saw the mortgage after her acknowledgment was taken at her house by Stratton, the justice. Mr. Guthrie did not testify in the case. There is no pretense that Mrs. Ayres ever in writing authorized any person to fill up said blank mortgage. There is no pretense that she ever in any way authorized any person except O'Driscoll to fill it up. The evidence is positive that she did not authorize her husband to do so. And the only authority that O'Driscoll got is shown merely by inference and implication.

Mrs. Ayres testifies:

"I never gave O'Driscoll any authority to fill up this mortgage over my name; never had any talk with him or Challiss."

The evidence however would seem to show that Mrs. Ayres understood that said blank mortgage was to be so filled up as to make it a mortgage to William L. Challiss on her property to secure a loan from Challiss for $1,000, with interest at the rate of 15 per cent. per annum; that O'Driscoll was to negotiate and secure the loan, and that she signed and acknowledged said blank mortgage with that understanding. This was probably sufficient for the jury to find, as they did, that O'Driscoll had authority from her to fill up said blank mortgage as she understood it was to be filled up. But the jury also found that O'Driscoll did not negotiate the loan. This finding however is as we think against the evidence. But whatever authority Mrs. Ayres may have given, she never either in writing or by parol or otherwise gave any authority to O'Driscoll or to any one else to fill up said blank mortgage as it was finally filled up by O'Driscoll, Challiss, and Guthrie. These persons filled up the blanks so as to make the instrument a mortgage to a different person from what Mrs. Ayres intended it should be, to make it secure a greater amount of money than she intended, and so as to make the money actually received draw a greater rate of interest than she intended. (The interest on $1,000 for one and two years at 12 per cent. per annum with $100 added as a bonus is more than the interest on $1,000 at 15 per cent. per annum.) And it was even dated back five days before she signed and acknowledged the same, for what reason is not fully disclosed. The notes which the mortgage purports to secure were not in existence when this instrument was signed and acknowledged. Nor were they in existence until Dec. 6th. Yet they, as well as the mortgage, were dated back to December 1st. But the persons who filled the blanks in said mortgage not only filled the blanks, but they also erased portions of what the instrument actually contained when it was signed

and acknowledged. For this they had no authority from Mrs. Ayres. They actually altered a portion of the instrument without any authority whatever from Mrs. Ayres. The evidence of Challiss above quoted shows this. The delivery of the mortgage was also unauthorized. Mrs. Ayres never consented that Probasco should be her mortgagee. She never consented that the mortgage should be delivered to him. And therefore, as the delivery to him was unauthorized by her, the delivery was wholly void as to her. There is no evidence showing that Mrs. Ayres ever knew, until she was so informed by the commencement of this suit, that said instrument was in fact filled up in a different manner from what she expected it would be filled up when she signed and acknowledged the same, or that it was in fact delivered to a different person as mortgagee from the one she expected it to be delivered to when she signed and acknowledged it. There is no evidence showing that she ever had the possession or control of any of the money procured by virtue of said mortgage, but on the contrary the reverse is shown. There is no evidence showing that her husband took home even the smallest portion of said money, or that he even had it to take home when he left Atchison, or that she ever saw any portion of the same; but on the contrary, the evidence tends to show that he expended nearly all of it in Atchison before he left, and that she never saw any portion of the same. A large portion of said money was however probably expended in paying off a judgment which was probably a lien on the land covered by said mortgage, and to that extent Mrs. Ayres received the benefit of said money. But this benefit she received involuntarily. The benefit was conferred upon her before she knew that the loan was finally consummated, or that the money was procured. The money was paid to discharge said judgment before her husband left Atchison. Under these circumstances it can hardly be said that Mrs. Ayres ratified said mortgage after it was finally filled up, or that she is now estopped from denying that the same is her mort-

8. Delivery to unauthorized mortgagee, void.

9. Estoppel; involuntary benefits.

gage.  She could hardly ratify a thing that she did not know existed, and can hardly be estopped by acts which she never performed, and upon which the other party never acted.  As we have before stated, there is no evidence showing that Mrs. Ayres ever beforehand authorized said mortgage to be filled up, as it was in fact filled up, or ever afterward knew that the same was so filled up, or ever knew that it was delivered to Probasco as the mortgagee, or ever performed an act which could be construed into a ratification of the instrument; and Probasco through his agent had full knowledge that the mortgage was executed merely in blank, and in the manner in which it was executed.  (As to estoppel, see Bigelow on Estoppel, 480; 5 U. S. Dig., First Series, 446, et seq., and cases there cited.)

There is such an obvious distinction between this case and the case of *Knaggs v. Mastin*, 9 Kas., 532, that we do not

10. Case of Knaggs v. Mastin distinguished.

think it is necessary for us to point out the distinctions further than we have already done in the original opinion in this case. (See opinion in the Knaggs case, 9 Kas., 548.)  But even if there were no distinction between the two cases, still, as the mortgage in this case was executed December 6th 1871, and the case of *Knaggs v. Mastin* was not decided till June 4th 1872, we hardly suppose that Probasco or his agent was very badly misled by that decision when said mortgage was executed. We have no doubt however of the correctness of that decision.

It is claimed that Mrs. Ayres cannot show title in herself to the mortgaged premises.  The mortgage purports to be a joint mortgage on the part of Ayres and his wife.  It does

11. Title to mortgaged premises may be shown.

not purport to show that the title to the premises is in one any more than in the other; and the pleadings do not show in whom the title is.  They merely show that the land is in the possession of both, and their family, and is occupied and claimed by both as their homestead.  Now, a rule in such a case that would exclude Mrs. Ayres from showing title in herself would also exclude

Ayres from showing title in himself, and therefore virtually exclude both from showing title. But it in fact makes no difference in whom the title is, so that it is in one, or the other, or in both. A mortgage of the homestead, without the joint consent of the husband and wife is void, without regard to whether one, or the other, or both, holds the title. (Const., art. 15, § 9; *Morris v. Ward,* 5 Kas., 239; *Dollman v. Harris,* 5 Kas., 597.) We suppose that, from the pleadings and mortgage, the title would be presumed to be in both jointly, but the evidence showed that it was in Mrs. Ayres.

The judgment of the court below was reversed in this court by a unanimous court. Whether the court would agree upon all the questions that may eventually be raised in the case, is not now known. For myself however I would say, that I am inclined to think that whenever a person advances money with the consent of the owner of a homestead to extinguish some lien upon the homestead, with the understanding of the parties that the person so advancing the money shall acquire a lien upon the homestead, such person will in equity acquire such lien to the extent of the money so advanced and so used to extinguish such first-mentioned lien, notwithstanding the instrument intended by the parties to create the lien, in favor of the party advancing the money, or to be evidence of such lien, may be void. The prior liens on the Ayres homestead that were extinguished with the money obtained from Probasco, are so indefinitely shown by the record and proceedings in this case that we cannot now render any judgment with regard to them. They are in fact so indefinitely and obscurely shown that it would hardly be proper for us to even intimate any opinion concerning them. What we have said in this, and in the original opinion, with regard to them is founded merely upon inferences drawn from vague portions of the record; and while the facts, as we have stated them, are probably not more favorable to Probasco than the facts really are, yet we have stated them more favorably to him than the record would really warrant. From what we have already stated it

12. Equity. Lien resulting from acts and benefits.

follows that a rehearing in this case cannot be granted; and the judgment as heretofore rendered in this court must remain as it is.

A final judgment cannot be ordered to be rendered upon the findings of the jury as they now stand, because neither party is entirely satisfied with the findings. Some of the findings are without evidence, and some of them are against the evidence; and many exceptions were taken during the trial. The ends of justice could probably be better subserved by a new trial upon the merits, with an opportunity of getting all the facts more properly before the court. We have examined all the authorities cited by counsel for Probasco, and not one of them is in conflict with the decision as rendered in this case. It is possible that some of them are in conflict with the fifth proposition stated in the syllabus. But even if that proposition is not good law, still this case must be decided just as it has been decided. It was not really necessary in this case that we should have decided said *fifth* proposition of the syllabus, and hence what is said therein, and the corresponding portion of the original opinion, may be treated merely as *dictum*. But as the great weight of authority both in England and in this country, and our own statutes, (Gen. Stat., 505, § 5,) are in favor of that proposition, it will not be very safe for any one to act as though it was not the law. The strongest decision in favor of Probasco cited by counsel is the case of *Van Etta v. Evenson*, 28 Wis., 33. The Wisconsin court however seems to have had but very few of the numerous authorities upon the question before them, although they seem to suppose they had all of them; and they labored under the erroneous belief that the weight of authority was with their decision. And from the briefs of counsel, and the opinion of the court, in that case, it would seem that they have no such statute in Wisconsin upon the subject as we have in this state, as no such statute was referred to by either court or counsel. We suppose however that they have the statute, and that they

13. Statute of frauds. Authority of Agents. Question reviewed.

merely overlooked it.*    But whether that decision is right or wrong, it does not decide this case.

Motion overruled.

All the Justices concurring.

REPORTER's NOTE.—Upon the filing of the foregoing opinion denying a rehearing, and the remanding the case to the Doniphan district court, *Probasco*, at the March Term 1875 of said district court, dismissed his action to foreclose said mortgage, so far as he could.    The defendants (*Ayres* and wife) insisted that the action should be retained as to the affirmative relief claimed by them in their answers, (to-wit, that said pretended mortgage should be adjudged to be void, and be surrendered up to be canceled, and that the record thereof be satisfied.)    The action thereupon proceeded to trial and judgment upon the issue joined by the defendants' answers and plaintiff's reply, and the district court rendered judgment in favor of *Ayres* and wife, setting aside and canceling the mortgage of *Probasco*.

Upon dismissing his action in the Doniphan district court, as above stated, *Probasco* commenced an action in the Circuit Court of the United

---

[*THE following is the section of the Kansas Statute of Frauds, referred to by the court:

"SEC. 5. No leases, estates or interests, of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note *in writing, signed* by the party so assigning or granting the same, or their agents thereunto lawfully authorized *by writing*, or by act and operation of law."—(Gen. Stat. of 1868, p. 505.)

The following is the corresponding section of the Wisconsin Statute of Frauds, to-wit:

"SEC. 6. No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance *in writing, subscribed* by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized *by writing*."—(Rev. Stat. of Wis., 1858, p. 613; 2 Taylor's Stat., p. 1254.)

Under this section the supreme court of Wisconsin held in *Smith v. Clarke*, 7 Wis., 551, 564, that an assignment of a school-land certificate *in blank*, was void.  In *Vliet v. Camp*, 13 Wis., 198, it was held that a warrant of attorney to confess judgment upon a note, which described the note as to makers, date, amount, and rate of interest, and name of attorney, but which warrant, when executed, was in blank as to the *payees* named in the note, but was properly filled by the attorney named before confessing the judgment, was valid, and the judgment rightly confessed.  The case as reported shows that *the note itself*, containing the names of the payees, was written on the same sheet of paper as the warrant of attorney.  The point was not raised, that the authority of the attorney to fill the blank was not *in writing*.  It was claimed on the one side that filling the blank was a *material alteration* of a written instrument, and on the other that it was an *immaterial* alteration.  In *Van Etta v. Evenson*, 28 Wis., 33, (cited in the text by counsel for defendant in error, and referred to in the opinion,) the facts are these: One Hegg had negotiated with an agent for a loan of money for himself, but did not know the name of the principal.  He made his note which was signed by himself and by his step-father, Evenson, complete in all respects except as to the name of the payee, which was left blank.  A mortgage to secure said note was made by Evenson and wife, complete in

States for the District of Kansas to foreclose his said mortgage. *Ayres* and wife answered, setting up two defenses—first, that the mortgage was void, as to which they stated the facts regarding the execution and delivery of said mortgage in blank; and for a second defense the defendants pleaded the judgment of the Doniphan district court, decreeing said mortgage to be null and void, in bar of the action, and set out a transcript of the record in the case of *Probasco v. Ayres and others* in said Doniphan district court. At the November Term 1875 of the U. S. Circuit Court, Judge DILLON, Circuit Judge, decided that the judgment of the Doniphan district court, even if erroneous, could not be reviewed by him, and that as the final judgment of a court of competent jurisdiction it was a bar to the action brought by *Probasco* in the Circuit Court to foreclose said mortgage.

---

all respects except as to the name of the mortgagee, which was left blank. The mortgage was delivered to Hegg to be used by him as security for the money to be obtained on said note. He took the note and mortgage to the agent, where he learned the principal's name, (Van Etta,) which he then and there inserted as payee and mortgagee. Evenson afterward claimed that the mortgage was void. The court said, (28 Wis., 37,) "The only question of law in the case is as to the authority of Hegg thus to fill the blanks," and that while it did not appear that Evenson "directly or expressly authorized Hegg to insert the name of the plaintiff or of any particular person," yet "his authority to do so, if it existed, is to be implied from the facts and circumstances of the execution and delivery of the papers," from which such "intention" of Evenson "is clearly manifested;" and, following the case of *Vliet v. Camp*, supra, the court held that "the subsequent insertion of the name of the payee and mortgagee by Hegg was a valid execution of an implied authority that the same should be so inserted by him." In the case in this court (*Ayres v. Probasco*) the "mortgage" was *in blank* as to the land itself, the amount loaned, the rate of interest, date of the note, and day of payment, as well as to the name of the mortgagee, when signed by Ayres and wife.—REPORTER.]