## WINFIELD SMITH, Respondent,

### *vs.*

## BYRON W. CLARKE and CHARLES S. CLARKE, Appellants, impl'ed with WILLIAM L. PARSONS and DAVID G. POWER.

### APPEAL FROM MILWAUKEE CIRCUIT COURT.

School land certificates are contracts for the sale of real estate, and must be treated as such in law. They cannot be transferred except by an assignment in writing, like any other contract for the sale of real estate.

School land certificates are in no just sense of the word, negotiable securities, and are not subject to the principles which govern the sale and transfer of such instruments, to which they bear no resemblance or analogy.

The statute does not authorize the conclusion, that the legislature designed to impart to school land certificates a negotiable or *quasi*-negotiable character.

To transfer a school land certificate, there must be an assignment in writing, as in other cases.

Although a practice has prevailed of making assignments in blank, on school land certificates, and passing them from hand to hand, yet that practice cannot give to them a negotiable character, as it is not authorized by law.

Where S. and P. own school land certificates in common, P. cannot transfer them as security for his individual debt, so as to affect the rights of S. in them.

Where P. transferred school land certificates, assigned in blank, owned by himself and S., to C. to secure P's debt, C. has an equitable lien upon P's interest in the certificates until the debt is paid.

Whether one of two co-partners, owning school land certificates, can dispose of the whole of such certificates—Quere ?

Where S. and P. own school land certificates in common, either is entitled to the possession, but neither has an exclusive right to the custody and control of them; and such possession of one of them is not an indicium of exclusive title in the possessor.

In an action relating to the title of school land certificates, claimed through an assignment in blank, the court will not decide that the assignment is void under the statute of frauds, as to the plaintiff, if the defendant also claims title by the same assignment.

The complaint in this case set forth that Smith and Power purchased two hundred and seven school land certificates, amounting to about 8,207 acres of land, situated in Columbia, Dodge, Fond du Lac, Outagamie, Brown, La Crosse, Adams and Crawford counties. The certificates were of the value of $15,000 or $20,000. The certificates were assigned in blank, and duly acknowledged, with verbal authority to fill in the names of the purchasers. They were left with Power, that he might make a list of them. On the 7th of July, 1855, they sold an undivided interest in them to Parsons, amounting to 70,000-1,263,499 of the whole. Parsons still owns the fraction sold to him. Smith had never sold or transferred the balance of his half to any one. Power being indebted to the Clarkes, delivered all the certificates to them to secure the payment of his debt; and they had the control of them, and they now threaten to sell them to pay their claim. Smith had not authorized them to be delivered or sold. The complaint prayed that the interest of the several parties might be declared, and an injunction granted to res-restrain the Clarkes from selling or parting with the certificates, &c.

The appellants answered that Power was largely indebted to them, for money borrowed, amounting to $10,000 ; that to secure the debt they had received from him 209 certificates, and a small additional security. At the time, they believed he was the owner of the certificates, and they took them in good faith. They denied any knowledge of the ownership of Smith. They claimed that the certificates they received of Power were different ones from those owned by him and Smith. Power had agreed with them that they might sell these certificates if their debt should not be paid, and apply the proceeds in its payment. They insisted that the certificates were not worth more than $8,000 ; they denied that these cirtificates had been left with Power to be listed, or that

Smith vs. Clarke.

Parsons had any interest in them. They also insisted that the certificates being assigned in blank, and the possession being rightly in either Smith or Power, and as to them they were partners, and each had authority to dispose of the same to innocent, *bona fide* purchasers, and therefore, as Power had disposed of them to the defendants, Smith had no claim to them, even if by proof it should appear that some of the certificates were the ones Smith claimed an interest in, until the debt was paid. The answer further charged Smith with colluding at the pledging of these certificates by Power, and so insisted that he had given his assent to the transfer to the Clarkes; and prayed that they might be adjudged *bona fide* purchasers of the certificates.

Parsons also answered, and set up his title to the certificates as stated in the complaint.

Witnesses were examined, and after hearing the proofs and arguments, the judge found as follows:

1. That on the third day of May, 1855, the plaintiff and the defendant Power purchased and became the owners jointly of school and university land certificates to the number and amount and in the manner set forth in the complaint, which were owned equally by said Power and Smith, each of them owning a moiety thereof, which certificates were issued and in form as stated in the complaint. The lands described in said certificates were in the counties specified in the complaint.

2. The plaintiff and David G. Power received said certificates with assignments in the form stated in the complaint, and executed as therein stated.

3. That afterwards the same were left in the office of said Power by said Smith for the sole purpose of having a list made thereof.

4. That afterwards, and about the seventh day of July, the said Smith and Power for a valuable consideration sold to the

defendant Parsons an undivided interest in said certificates and lands, equal to 70,000-1,263,499, and thereupon executed and delivered to the defendant Parsons the written instrument of which a copy (marked A) is hereto annexed.

5. That neither the plaintiff nor said Parsons has ever made any other disposition of said certificates, or of any of them, nor authorized any other person so to do.

6. That afterwards said Power pledged said certificates for money borrowed by him, and on or about the second day of May, 1857, he pledged them, or the most of them, to the defendants, Byron W. Clarke and Charles S. Clarke, as security for the sum of $7,935, no part of which has ever been paid.

7. That said Byron W. and Charles S. Clarke received said certificates in good faith, without any knowledge of the claims or interests of said Smith and said Parsons in them, believing them to be the sole property of said Power alone.

8. That neither said Smith nor said Parsons had any knowledge or intimation of such pledge, nor did either of them in any way assent to or authorize the same.

9. That about the time of making said pledge, said Power executed to said Clarkes an instrument, of which a copy is hereto attached (marked B,) and executed no other assignment or transfer of said certificates, and delivered them with the said blank assignment to said Clarkes.

10. That about the time of said pledge, said Power executed and delivered to said Clarkes for his said indebtedness, his promissory notes, dated about 2d March, 1857, two for $4,000 each, payable in six months after date, and one for $2,000, payable five months after date, on which notes judgment has since been entered.

11. That said lands are worth from one dollar an acre to five dollars an acre above the price agreed to be paid to the State for said lands.

12. That about $1,200 included in the sum advanced to

Power, as above stated, was paid by said Clarkes for taxes and interest due to the State, at the request of said Power, who had agreed with the said Smith to pay the said taxes and interest on the said Smith and Parsons portion of said lands, as well as on his own, he being indebted to said Smith, and said Power in paying or causing the same to be paid discharged an indebtedness to said Smith to that amount.

13. It is a usual but not universal practice to transfer school and university land certificates by delivering them with assignments in blank, as was done in their case, and the great mass of said certificates are so transferred.

14. Said Power has also given to said Clarkes' other security for his indebtedness to them, but to what amount is not ascertained.

15. The said certificates pledged to said Clarkes which were owned jointly by said Smith and Power were in part numbered as follows: [Here follows a list of the certificates.

Some of the said certificates so owned by said Smith and Power, were so pledged to said Clarkes by said Power, which described certain lands, each certificate being generally for forty acres.

I find as conclusions of law on the facts, that the plaintiff is still the owner of an undivided one-half of the School and University land certificates hereinbefore described and numbered, and describing the lands hereinbefore described, and of the lands therein described subject to the claim of said State and of said Parsons; and that the transfer and delivery of said certficates by said Power to the defendants Clarke in no way affected the right of property of said Smith therein.

That the defendants Clarke have a right to retain as security for the indebtedness of said Power to them the other undivided one-half of said certificates, free and clear of any claim or interest of said Smith or Parsons therein, except the right of said Smith and Parsons to redeem the same.

That said Parsons and Smith have a right to redeem and receive possession of said undivided half of said certificates now in said Clarke's hands, by paying them the amount of money advanced by them to and for said Power with interest from the date of such advance, and all payments for interest or taxes which said Clarke may have made to the State on such lands, deducting what may have been realized by said Clarkes or paid to them on such indebtedness. An order must be made referring the case to one of the court commissioners to divide said certificates in quantity and value, as near as may be, into two parts, and to take testimony as to the number and description of the certificates and lands embraced therein, which were delivered to said defendants by Power, and owned jointly by him and Smith, and should said defendants decline or refuse to be examined as to the same, then the finding of the court on that subject shall remain as hereinbefore set forth.

Also, to take testimony and report to this court the amount of money paid by said defendants, Byron and Charles S. Clarke, to the State for interest and taxes on said certificates and lands therein described.

Injunction to remain until further order of the court.

On this finding, judgment was entered accordingly, from which this appeal is taken.

*Jason Downer*, for the appellants.

1. The certificates are assigned by one Frary to Smith & Power. These assignments are in blank, and in violation of the statute of frauds, and void; Rev. Stat., chap. 75, § 6. If this be so, then Frary never had any interest recognized by the law in these certificates, and Smith and Power never acquired any interest, and having none Smith cannot maintain this suit.

2. If any interest or property is transferred by the delivery of the certificates with blank assignments thereon, then they are placed on the same footing as certain other similar instruments relating to personal and real estate, such as bills of lading, certificates of stock in incorporated companies, bonds, and in some instances deeds of real estate, in which blanks are left to be filled up. They are *quasi* negotiable, and so far partake of the character of negotiable instruments that innocent *bona fide* purchasers of the same are to be protected against the actual owner. The reason is, that those agents or parties who have either transcended their authority, or without authority have perpetrated a fraud, are clothed with the usual *indicia* of title, and either by *carelessness* or *misplaced confidence* of the rightful owner, have been enabled to do an act *fraudulent* in itself, and for which some one must suffer. *Commercial Bank vs. Kartright*, 22 Wend., 348. Where goods are obtained by false pretences, the fraudulent vendee may sell to a *bona fide* purchaser and give him a perfect title. *Mowry vs. Walsh*, 8 Cow., 243; 13 Wend., 572. Because the vendor has clothed the fraudulent vendee with the apparent right of property; *Saltus vs. Everett*, 20 Wend., 280; *Lickbarrow vs. Mason*, 2 T. R., 63; 2 H. Black. R., 11; 5 T. R., 367; so of bills of lading; *McCauley vs. Davis*, 6 East, 538; id., 17; Story on Agency, 127; id., 227 and 228.

Apply these principles to the present case. It was in the power of Smith to have filled up these blank assignments to himself and Power, the real owners, at the time they purchased of Frary. If they had been so filled up, the assignments themselves would have given notice to the world of the real owners of the certificates. But instead of that, Smith, well knowing that these certificates according to universal custom passed from hand to hand by virtue of these blank assignments, virtually said to all the world, Power is the owner of these certificates, and authorized to dispose of them.

He was not ignorant that Power had pledged them. He talked about it. But he took no steps to stop Power from pledging and disposing of them. By his long *silence, carelessness and negligence,* he has enabled Power to sell or pledge these certificates to *innocent parties,* and he ought not to be heard to assert his rights to the certificates to the injury of such innocent parties.

3. Smith and Power were, as to the transactions respecting the certificates, limited partners. It was intended that the certificates should be sold with the blank assignments, and each party was in fact impliedly authorized to sell and dispose of the certificates, each was the agent of the other; and no matter what was the extent of the authority as between themselves, as to the third parties they were clothed with full authority.

4. The assignor of each certificate, by leaving the name of the assignee in blank, gave a general authority to the actual holder or possessor of the certificate to fill in the blank with his name, and thus make a privity of contract between the assignor and last holder, shutting out the rights of all intermediate holders—in fact the assignor makes such intermediate partners his agents with full authority to act for him. 1 Greenleaf, Ev., § 568 and notes; Ex parte Kerwin, 8 Cow., 118; *Wooly vs; Constant,* 4 Johns, 60; *Smith vs. Crooker,* 5 Mass., 538; *Clark vs. Spenser,* 6 Cow., 60; *Union Bank vs. Carter,* 3 Comstock, 204; *Watson's ex'rs vs. McLaren,* 19 Wend., 557; 2 Story, 213; 2 Met., 3.

5. Clark & Co. are innocent *bona fide* purchasers of these certificates so as to entitle them to protection as such.

*Smith & Salomon* for the appellee.

1. Smith & Power purchased of or through Frary the certificates of the lands and the equitable interest in the lands them-

selves. They paid for them. They received the certificates with the assignments, and they received verbal authority to fill up the blanks with their own names. The complaint so alleges, and the answer does not deny, and therefore admits it. Code, § 75. This authority is sufficient, and makes the assignment good to them in equity at least, and the assignment when so filed would be a valid legal assignment to them. *Smith vs. Crooker*, 5 Mass., 538 ; *Wooley vs. Constant*, 4 J. R., 55 ; *Zouche vs. Clave*, 2 Dev., 35 ; 1 Vent., 185 ; See note, 5 Mass., 541.

Smith & Power had, then, the whole right under the contract which the original purchaser from the State had under the contract of purchase. That is an equitable title to the lands, the legal title being in the State. R. S., Ch. 24, § 19 ; *Smith vs. Mariner*, 5 Wis. R., 551. It don't seem necessary to argue that they were tenants in common of that interest. They were not partners, nor had they the right of partners. Even were they partners—actual, undisputed partners—not only in this, but in all transactions, we do not see how either party could transfer the other's title to the real estate owned in common, without an express authority. Not only is there no evidence of partnership or *quasi* partnership, or a " degree of partnership," as was insisted on the trial below, but all the evidence tends to disprove the supposition. The only sale made by Smith & Power was to Parsons, and was by written transfer executed by Smith & Power individually. By what means has Smith's right as tenant in common been transferred to the defendants, Clark & Co. ? Several answers are made, one is, that Power as a partner transferred it.

We say, first, that Power, if a partner, could not have transferred it. Second, that he was not a partner.

Again, a claim is made that these certificates with blank assignments are negotiable, or *quasi* negotiable. We don't know where counsel find authority for saying that such con-

tracts have any negotiability.    The law defines what is ne-
gotiable with great distinctness.    All else is non-negotiable.
A contract for the sale of land is not negotiable.    It conveys
an equitable interest in land, which is never negotiable.    It
is not like a note or bill.    It is not even like a certificate of
stock endorsed in blank.    It is not like a bill of lading.    For
these are purely personal property, or the representatives of
personal property.  It has some points of resemblance to these,
and that is all.  We might rely on this distinction to dispose
of the great bulk of the argument and authority upon the
other side.  But we go further.  We contend that if the prop-
erty in question, were personal, and not real, still the case
would not come within the principles, which they seek to
apply to it.    A careful examination of the principles and
of the authorities, which declare and apply them, makes
this plain.    The case in 22 Wend., 348, *Com. Bank vs. Kart-
right,* is cited.    How much the authority of that case is
weakened by the dissenting opinion of the Chancellor and
minority of the court, we will not stop to consider.    There is
a broad, plain distinction between that case and many simi-
lar to it, and the one at bar.    *There* was an actual authority
to *pledge* the stock.    Here is none.    There an agency exist-
ed in fact, but the agent disobeyed his instructions.    Here
there never was an agency.    The distinction is ably and ad-
mirably elucidated in the great Schuyler case, *Mechanics'
Bank vs. New Haven R. R. Co.,* 3 Kernan, 599, 621, *et seq.*
The plaintiff never created Power his agent.    But it is said
he entrusted him with the possession of the certificates assign-
ed in blank, and so furnished him with the *indicia* of
title, and induced others to deal with Power as owner.  Pow-
er was tenant in common of the lands and of the certificates,
and had an equal right with Smith to the possession of them.
If then these certificates are the *indicia* of the title in the
sense used in the books, it is important to consider that in

Smith vs. Clarke.

Power's hands they were still in the possession of one of the rightful owners, and his possession was not inconsistent, but entirely consistent with the full unlimited assertion by Smith of his rights. It is not a case where his possession affords any presumption of exclusive ownership, or of any agency. The cases in which the agent having the *indicia* of title entrusted to him by his principal, may sell a good title, relate to personal property. They are cases where the possession of these *indicia* is inconsistent with the idea of total want of power to sell. Most of them are cases where there is a direct chain of title to the possessor, coming from the original owner, and these *indicia* are the documents proving the title, as bills of lading, bills of sale, assignments, registry in wharfinger's books, and corporation books. Power had failed to pay over the money to the plaintiff. But even this authority would not authorize a pledge. And a mere pledgee could not hold them against the true owner. The pledgee, who has no title until sale of the pledge, stands in a very different position from the *bona fide* purchaser.

As to the *bona fide* purchaser of real estate, see *Everts vs. Agnes*, 4 Wis., 343. There the doctrine was urged with great force, that the true owner had permitted another to hold the *indicia* of title and thereby defraud an innocent purchaser for value. But the court decide that the title to real estate is not to be divested by a conveyance executed by the true owner, deposited with a bailee, but delivered to the grantee without the consent of the grantor, and that too, when the record showed a perfect title in the vendor, and there was nothing to throw doubt or suspicion upon it. Had these certificates been assigned to Power by name, the case would not then have been so strong as *Everts vs. Agnes*, for in the latter, the purchaser had, as he supposed, the additional protection of the registry laws. But it is claimed on the other side that Clark & Co. might fill up these blank assignments with

their own names, and then claim as the assignees of the first assignor. The utmost Clark & Co. could claim, is to hold Powers' title, discharged of any equities against him in favor of strangers. That is the utmost limit to which any sound doctrine leads us. The plaintiff may well admit this in its broadest sense. He holds no equity as against Power.

The doctrine of *laches* has no place here against the plaintiff. It was no *laches* to leave the papers in Power's hands, for he had an equal right to the possession. No law would take them from Power and give them to Smith. When Smith knew of the transfer by Power, the evidence shows that he repeatedly attempted to find out who had them; that for a long time he could not learn who had them; that Power promised continually to get them back; that as soon as Smith at last found out who had them, he gave notice to the holders of his interest; that as soon as the defendants threatened to foreclose, he brought this suit.

*By the Court*, COLE, J. We have already had occasion to consider the nature and character of school land certificates, as they are commonly called, and have no doubt but they are truly contracts for the sale of real estate, and must be treated as such in law. (See R. S. Chap. 24; *passim; Smith vs. Mariner*, 5 Wis. R., 551; *J. A. B. Whitney vs. State Bank, post.*) They are not in any just sense of the word, negotiable securities, and therefore it is a great mistake to apply to them the principles which govern the sale and transfer of such instruments, to which they bear no resemblance or analogy. The chapter of the revised statutes just above cited, declares what force and effect shall be given to the certificate, (§ 20) when the certificate shall become void and the purchaser forfeit all right and interest in the land described in such certificate, (§ 15) and further provides that the certificates

may be acknowledged and recorded in the same manner that deeds of conveyance are authorized to be recorded; and that they also may be assigned by writing, which may be acknowledged and recorded in like manner; and that the person to whom the same shall be legally assigned, shall have the same rights and remedies thereupon as the original purchaser would have had, (S. 22.) There is nothing in the statute which would authorize the conclusion that the legislature designed to impart to these certificates, negotiable character, or a *quasi* negotiable character, and there is certainly nothing in the phraseology of the certificates which sounds like words of negotiability. Undoubtedly the certificates can be sold, and transferred by an assignment in writing like any contract, for the sale and conveyance of real estate, and although the custom may be as testified to by the assistant chief clerk of the school and university land office, Charles R. Gleason, to have the party to whom the certificate is issued, sign and acknowledge an assignment of the same, leaving the assignee's name in blank, and then pass the certificate from party to party without further assignment; yet this practice fails to establish the negotiable or *quasi* negotiable quality claimed for them upon this argument. The certificates in controversy in this cause being in their legal character, contracts for the sale of real estate, and belonging to the respondent Smith, and Power, it follows that the transfer and delivery of them, by Power, to the appellants as security for the payment of his individual debt, could not, in any way, affect the right or bind the interest of the respondent. The appellants had an undoubted right to retain, as security, for the indebtedness of Power to them, the certificates to the extent of Powers' interest in them, and no further. It was suggested that the respondent and Power, as to these certificates, were special or *quasi* partners, each in fact impliedly authorized to sell and dispose of them, as the agent of the other. There is not a particle of proof

in the case tending to show that they stood towards each other in the relation of partners, unless the circumstance that they bought the certificates jointly, and each owned an undivided interest in them, would justify such an assumption, as evidently it would not. It becomes therefore unnecessary to enquire whether if they have been partners, Power could, by virtue of that relation, and the power which each partner has to dispose of the partnership property—have pledged the certificates to secure his individual debt, as he attempted to do in this case.

It this connection it may be well to make a simple observation upon another position taken by the counsel for the appellants upon the argument. He insisted that since Power had the possession of the certificates, assigned in blank, he was clothed with the usual indicia of title, and that it is a maxim of law, that when one or two innocent persons must suffer by the misconduct of a third person, that party shall suffer who, by his own acts, and conduct, has enabled such third person, by giving him credit, to practice a fraud or imposition upon the other party. But the obvious answer to be given to this position is, that the certificates belonged to the respondent and Power jointly, and the latter was as much entitled to the possession of them as the former. Neither could claim an exclusive right to the custody and control of the certificates. And the evidence and allegations in the complaint furnish an explanation why the certificates were left in the possession of Power instead of being kept by the respondent.

The only remaining objection taken to the judgment of the circuit court which we feel called upon to notice, is, that the assignment of the certificates in blank was in violation of the statutes of fraud, (R. S., chap. 75, § 6) and void; and that no interest in the certificate or land could be transferred to and vest in the assignee by virtue of such an assignment.

Smith vs. Clarke.

Whatever might be the effect of these assignments, as between the assignor and assignee, it becomes unnecessary in this case to consider, since certainly the respondent had such an equitable interest in the certificates as against the appellants, as the court could protect and secure.

We consider the judgment of the circuit court correct, and it is therefore affirmed.