THE MASON LUMBER COMPANY v. JOHN H. COLLIER.

*Land certificates—Assignment—Sale of timber—Equity.*

A party who obtains the legal title to land with notice and in fraud of the rights of the equitable owner of the timber on said land holds the legal title to such timber as the trustee of the equitable owner, and in fraud of his rights, and equity will confirm the title of such equitable owner to said timber.

So *held*, where the owner of a certificate of purchase of State swamp lands assigned and delivered it to a purchaser, leaving a blank in which the purchaser was authorized to insert the name of his vendee as assignee, who without filling in such blank conveyed the timber on the land to a corporation for a valuable consideration, which deed was duly recorded, after which the purchaser handed the certificate with the assignment still in blank to his brother, who delivered the same to the defendant, but without any agreement that he was to become the absolute owner, or any authority to fill in the blank in the assignment, from any one, and said defendant, with knowledge of the equitable rights of said corporation, filled his own name in the blank and procured a patent from the State of the land, whereupon the corporation filed a bill to confirm its title to the timber, and for other relief.

Appeal from Alpena. (Emerick, J.) Argued January 25, 1889. Decided February 20, 1889.

Bill to confirm complainant's title to certain pine timber. Defendant appeals. Affirmed. The facts are stated in the opinion.

*R. J. Kelley,* for complainant.

*Hatch & Cooley,* for defendant.

MORSE, J. The complainant filed its bill for the purpose of confirming its title to certain pine timber, stand-

ing and growing upon certain lands in the counties of Presque Isle and Montmorency, and also to pine timber cut and removed from said lands by it before the filing of said bill. The bill also prayed that a decree might be made giving the complainant lawful right to enter upon said lands, and remove the said pine timber remaining thereon, and that the defendant be enjoined from instituting any action at law for the recovery of any of the timber cut and removed from said lands by complainant, or the value of the same; and also enjoined from selling or incumbering a portion of said lands, to wit, the S. E. ¼ of S. W. ¼ of section 5, township 32 N., of range 4 E., and the N. E. ¼ of the S. W. ¼, and the N. ½ of S. E. ¼, of section 31, in township 33 N., of range 4 E., except in such manner as to secure to said complainant its rights in the pine timber standing and being thereon, as claimed in the bill of complaint.

The defendant answered, denying the title of complainant to said timber, and averring his ownership of the same under patent from the State of Michigan. The case was heard upon proofs taken in open court before Hon. Frank Emerick, circuit judge, and decree entered for complainant.

The undisputed facts in the case are as follows: In 1881, Frank D. Spratt and one Adams had an arrangement with one William O'Connor, of Ingham county, by which Spratt and Adams looked up lands, and sent the descriptions to O'Connor. O'Connor was building State roads, and had scrip with which he located the lands or reserved them from the market. On October 14, 1881, the Commissioner of the Land-office issued to William O'Connor a certificate of purchase of the lands involved in this controversy; and, on the 15th day of same month and year, O'Connor and his wife made an assignment of

this certificate, leaving a blank space for the name of the assignee to be inserted, and forwarded the same to Augustus N. Spratt, who was to have the title to the land by agreement made with his brother, Frank D. Spratt, and Adams. A. N. Spratt paid O'Connor for the same in full, and by arrangement between them the blank in the assignment was left so that Spratt might sell the lands at his convenience, and insert the name of the purchaser therein. Spratt, therefore, became the owner of the certificate, with authority from O'Connor and wife to insert in the blank assignment the name of any person he saw fit. A. N. Spratt paid Spratt and Adams for this certificate the sum of $1,600.

While this certificate was in the hands of A. N. Spratt, and while he was still the owner of it, and on January 21, 1882, Augustus N. Spratt, by quitclaim deed, con. veyed to the complainant the pine timber on these lands, with the condition that the said timber should be removed within 10 years from the date of the deed. The deed was made out and acknowledged on January 18, 1882, the day of the purchase, but the lands were not specifically described therein by their legal subdivisions of sections. On the 21st, the specific descriptions were written in, and Spratt again on that day signed and acknowledged the same. The deed was recorded in Montmorency county on June 8, 1882, and in Presque Isle on August 2, same year, in the proper offices. The complainant paid A. N. Spratt $2,600 for this conveyance. At the time this deed was made no name had been inserted in the blank in the assignment. In the winter of 1883 and 1884 the complainant entered on these lands for the purpose of cutting and removing the pine timber thereon.

The defendant acquired his title in the following manner: Some time in 1883, A. N. Spratt handed back to

his brother the certificate of purchase of these lands, and the blank assignment which was written on the back of the certificate. No consideration for this transfer passed between the two brothers. Frank Spratt knew of the sale of the timber on these lands to the complainant, and it appears that the lands denuded of the timber were not then considered to be of much value. Frank asked A. N. to give him the certificate, and he did so. In the fall of 1883, Frank Spratt opened negotiations by letter with the defendant, Collier, for the purchase of a portable saw-mill owned by the latter. In November of that year he wrote to Collier from Alpena about the mill, having seen, in the Detroit Evening News, Collier's advertisement of the mill for sale. Collier was then at Oakley, Mich. In this letter Spratt inquired as to particulars about the mill, and thought he might want it, if it suited him, and could be had cheap enough. He asked for a general description of the mill, and added the following postscript:

"P. S. Will you trade it for good farming lands in this county?"

Correspondence followed between them in reference to a trade. The letters that Collier wrote to Spratt were not put in evidence. Spratt is not certain that he ever received any letters from Collier, but if he did he cannot find them. He thinks he received one. Five letters are in the case written by Spratt to Collier, and Spratt testifies that the whole transaction was by letter. The second letter acknowledges the receipt of a letter from Collier dated November 10, 1883, and is unimportant. He sent one Bingham down to see Mr. Collier, and to look over the mill, but Bingham had no authority to complete any bargain with Collier. Spratt testifies that Bingham, when he came back, reported that Collier had made a proposi-

tion to sell the mill, and would take security on the farming lands and on the mill, and take Spratt's notes. He then sent the following letter:

"ALPENA, Dec. 3, 8:30 P. M., 1883.

"MR. COLLIER,

"*Dear Sir:* Mr. Bingham has just returned, and talked with me a short time. I will send you a list of lands, also plats, in two or three days (I have to go up river in the morning), which will give you an idea of their location, if not of their value. I can give you good title to a thousand acres, if necessary. I will write again when I send plats, etc. Respectfully,

"F. D. SPRATT."

December 10, 1883, he inclosed the certificate in this case to Collier in the following letter. He swears that the assignment was in blank, as received from O'Connor, no name ever having been filled in it:

"ALPENA, MICH., 10th Dec., 1883.

"J. H. COLLIER,

"Bay City.

"*Dear Sir:* Inclosed herewith you will find swamp-land certificates, which are so many titles to the lands described in them. I send them as a guaranty of good faith on my part in the trade for the saw-mill, etc. I expect to have business down the shore before long, when I will arrange for payment for the mill as near what was talked by you and Mr. Bingham as possible,—will make it satisfactory, and any delay in doing so shall not delay time of payment, etc. I would liked to have sold you land enough to have paid for the mill. I am delayed in arranging some back taxes on some of my land that have run for years, and which can now be settled (soon) very reasonably. If you prefer, I will deposit enough of these certificates to make you safe, instead of a mortgage. I hold them instead of deeds. They are so convenient to convey title, and no expense. If you get impatient, write me. I want to avoid making two trips down the shore.                    "Yours truly,

"F. D. SPRATT."

February 11, 1884, he again wrote Collier, as follows:

"ALPENA, Feb. 11, 1884.

"J. H. COLLIER, ESQ.

"*Dear Sir:* My whole scheme of mill business in W. T. is busted, the bottom having fallen out of both ends. I thought I was in for a good speculation, and had reasons for so thinking, but circumstances over which I had no control have made it impossible for me to pro-- ceed in the enterprise, and I am compelled to abandon the whole trade of saw-mill, and all its bearings. Perhaps I need not speak of the feelings which the statement causes me, but I feel awful mean. Had you taken land for the mill, the trade would have been consummated. As it is, you will get some land. Those certificates call for deeds, and are all right. You have only to forward them to land-office to obtain deeds. I leave for Canada in an hour, for several weeks.

                    "Yours reluctantly,
                              "F. D. SPRATT."

The defendant introduces in evidence a patent from the State of Michigan, obtained upon this certificate and assignment, dated September 22, 1884, conveying these lands to him, and also a quitclaim deed of the same premises from William O'Connor, dated February 23, 1887; thus showing the legal title of the lands to be in him. It appears that at some time before the issuing of the patent the name of the defendant, John H. Collier, was written in the blank space for the assignee in the assignment, by whom it is not shown, except by inference.

Frank Spratt testifies that in March, 1884 or 1885, he thinks it was in 1884, Collier came to Alpena, and to the house of Spratt, to see if the arrangement about buying the mill could not still be carried out, and Spratt take back the papers he had sent Collier, and Spratt told him he would if he could. There was no agreement at that time that Collier was to be the owner of the certificate absolutely, and Spratt never authorized him at any time to fill in his (Collier's) name in the assignment, nor did

Collier ever notify Spratt that he had done so. Collier said in this interview that he did not know much about the certificates, or what they were good for. He made the proposition that Spratt take back the certificates, and take the mill as before agreed, and give a mortgage upon these lands, and other lands, and his notes, as security for the payment of the purchase price of the mill. Spratt also swears that at this time Collier asked him if there was any pine on the lands, and Spratt told him that the pine timber had been sold to the Mason Lumber Company by his brother, A. N. Spratt, and most of it had been cut off by complainant, and that his brother owned the timber at the time he sold it. Collier did not testify in the case, and the facts hereinabove set forth were practically undisputed by any evidence taken or offered at the hearing.

The fair inference from this testimony, and the fact that it is not denied by Collier, is that Collier himself wrote his name in the assignment, without any authority except what may be contained in Spratt's letter of February 11, 1884, and that he did not write his name therein until after his interview at Alpena with Frank Spratt, and therefore after he had actual notice of the rights of the complainant in the pine timber upon these lands. The equities are therefore entirely with the complainant. No consideration passed from Collier to Frank Spratt for these lands, unless it be the trouble or annoyance arising to him out of the failure of Spratt to purchase his mill. It is doubtful if he had any legal claim against Spratt for damages which he could have enforced. He demanded nothing of Spratt on this account, but Spratt, feeling " awful mean " about the matter, gave him the certificates, evidently considering them of little value, as also did Collier.

Is there any reason why the equitable right to this

timber in the complainant cannot be confirmed and established in a court of equity? We think not. It is contended by the counsel for the defendant that the delivery of the certificate with the blank assignment carried with it no interest in the lands therein described; that interest in lands cannot be conveyed in this way, as it is within the statute of frauds; that no instrument of conveyance can be operative unless the name of the grantee is inserted therein. It is admitted by the learned counsellor that an assignment, like the one in question here, if filled in with the name of an assignee, after delivery in blank, with the consent of the assignor, would become operative and valid in the party whose name was thus inserted. Therefore if A. N. Spratt, under the circumstances of this case, at the time he made the conveyance to the complainant, had filled the blank with his own name, or that of the complainant, it would have been valid in the hands of either, as O'Connor, the owner of the certificate in the first place, and the assignor, had by his action authorized it to be done.

Both parties in this case are claiming under the same title, and under the one assignment from O'Connor. All the authority, at the most, that Collier ever had to write his name in this assignment, was to transfer the title to the lands, without the pine timber, which he knew had been sold to complainant, and a large amount of it reduced to possession by the company. If he wrote his name therein without the consent of Frank Spratt, he has no equitable interest in the lands whatever, and the legal title standing in him would be considered in a court of equity to be held in trust by him for the rightful owner of the certificate; and as he never had any authority to fill in his name except as to the lands, and no authority by so doing to hold or acquire any interest in the pine timber, he must now be held to have the

legal title to the standing timber as the trustee of the complainant, and in fraud of its rights. What timber has been cut and removed he has no title to, and no right of action for any damages on account of the cutting and removal of such timber. The quitclaim deed from O'Connor cuts no figure in the case. It was acquired after this suit was commenced, and when O'Connor had no interest whatever in the premises, and could claim none.

The equitable title in the pine timber was in the complainant when Collier obtained his legal title, and the testimony shows that he acquired such legal title in bad faith, as against complainant. The assignment was operative and valid in equity, to Spratt, when he deeded the timber to complainant. *Smith v. Clarke*, 7 Wis. 551; *Van Etta v. Evenson*, 28 Id. 33; *Schintz v. McManamy*, 33 Id. 299; *Field v. Stagg*, 52 Mo. 534; *Drury v. Foster*, 2 Wall. 24; *Owen v. Perry*, 25 Iowa, 412; *Devin v. Himer*, 29 Id. 297; *Clark v. Allen*, 34 Id. 190; *Swartz v. Ballou*, 47 Id. 188; *McCleery v. Wakefield*, 76 Id. 529 (41 N. W. Rep. 210). See, also, *Loomis v. Roberts*, 57 Mich. 284 (23 N. W. Rep. 816).

The decree of the court below will be affirmed, with costs.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.