CHARLES H. FOLSOM ET AL., APPELLEES, V. JOHN L.
McCAGUE ET AL , APPELLANTS.

[FILED MARCH 11, 1890.]

1. Real Estate Contracts: ASSIGNMENT IN BLANK: NO LIEN
   CREATED.    C. and F., the owners of certain land-grant contracts
   for real estate therein described, assigned the same in blank (*i. e.,*

name of the assignee omitted), duly acknowledged, and sent them to a real estate agent at Omaha to be exchanged for city property. The agent, instead of making the exchange as directed, drew a draft on one B. of Cheyenne for $600, which was discounted by the appellants. The contracts were, without the knowledge or consent of C. and F., attached to the draft to be delivered to B. on the payment of the draft. B. failing to pay the draft, it, with the contracts, was returned to the appellants. *Held*, That the appellants have no lien upon the contracts as against C. and F.

2. A court of equity has jurisdiction to compel the delivery of the contracts to the owners thereof.

APPEAL from the district court for Douglas county. Heard below before WAKELEY, J.

*Howard B. Smith*, for appellants:

The contracts were sent by appellees to Crew, as their agent, and they cannot now question his action as against appellants who acted in good faith. (*Garland v. Wells*, 15 Neb., 298; *Webster v. Wray*, 17 Id., 579.) They are bound by his apparent authority. (See cases cited on next point, and Bigelow, Estoppel [4th Ed.], 547; *Herrick v. Atwood*, 25 Beavan [Eng.], 205 [2 DeG. & J., 21]; *McNeil v. Bank*, 46 N. Y., 325; *Combes v. Chandler*, 33 O. St., 178; *Internat'l Bank v. German Bank*, 71 Mo., 183; *Arnold v. Johnson*, 66 Cal., 402.) Even if the contracts were not specifically pledged by Crew, appellants have a bankers' lien thereon. (1 Jones, Liens, ch. 6; 1 Daniel, Neg. Inst., sec. 334a; Morse, Banks and Banking [2d Ed.], p. 42; Colebrook, Coll. Sec., ch. 7; *Bank v. Bank*, 1 How. [U. S.], 234 [3 Myer's Fed. Dec., 150]; 6 How., 212; *Kelly v. Phelan*, 5 Dill. [U. S.], 228 [3 Myer's Fed. Dec., 146]; *Bank v. Ins. Co.*, 104 U. S., 54; *Jourdaine v. LeFevre*, 1 Esp. [Eng.], 66; *Davis v. Bowsher*, 5 T. R. [Eng.], 488; *Bolton v. Puller*, 1 B. & P., 539; *Scott v. Franklin*, 15 East, 428; *Brandao v. Barnett*, 12 Cl. & F., 787; *Jones v. Peppercorne*, Johns. [Eng.], 430; *Giles*

*v. Perkins,* 9 East, 12; *Locke v. Prescott,* 32 Beavan, 261; *Re Joseph Williams,* 3 Irish Rep., Eq., 346; *Goodwin v. Roberts,* 1 App. Cas., 476; *Rumball v. Bank,* 2 Q. B. D., 194 [20 Moak, 276].)

*Estabrook, Irvine & Clapp, contra:*

This action affords appellees their only proper and adequate remedy. (1 Pomeroy, Eq. Jur., sec. 185; *Pusey v. Pusey,* 1 Vern. [Eng.], 273.) The cases cited by appellants all relate to realty, except *Herrick v. Atwood,* 25 Beavan, 205, which is inapplicable in this country on account of our registry laws. No instrument can pass title which does not contain the name of the grantee. (3 Washburn, R. P. [5th Ed.], 578*; *Arguello v. Bours,* 67 Cal., 447; *Ayres v. Probasco,* 14 Kan., 175; *Whitaker v. Miller,* 83 Ill., 381; *Burns v. Lynde,* 6 Allen [Mass.], 305; *Devlin, Deeds,* sec. 456.) If the transaction created any lien, its nature was that of an equitable mortgage by the deposit of title papers, which is not recognized in this country. (Jones, Mortgages, sec. 185; *Schitz v. Dieffenbach,* 3 Pa. St., 233; *Meador v. Meador,* 3 Heisk. [Tenn.], 562; *Vanmeter v. McFaddin,* 8 B. Mon. [Ky.], 435.) Appellants have no lien as bankers. (*Bank v. White,* L. R. 4 App. Cas., 413; *Brandao v. Barnett,* 12 Cl. & F., 787.) The Nebraska cases cited by appellants are not in point.

NORVAL, J.

This is an action in equity brought in the district court of Douglas county by the appellees to require the appellants to surrender certain land contracts to the plaintiffs. The district court decreed that the plaintiffs were entitled to the possession of said contracts and that the defendants should surrender the same to the appellees. The defendants appeal.

On and before the 28th day of April, 1887, the appellees,

being the owners of certain contracts in writing, to-wit, Nos. 77,895, 77,896, 77,897, and 77,898, in and by which the Union Pacific Railway Company agreed to convey, on certain terms and conditions, the northeast, northwest, southwest, and southeast quarters of section 17, township 17 north, range 52 west, in Cheyenne county, Nebraska, assigned these contracts as follows (We copy the assignment indorsed on one, which is similar to the other assignments):

"We, P. M. Croninger and C. A. Croninger, C. H. Folsom and Jane Folsom, the within named purchaser, for and in consideration of ———— dollars, to me in hand paid, do hereby sell, assign, and transfer all my right, interest, and claim in and to the within described tract or parcel of land, unto ————, of the county of ————, and state of Nebraska, his heirs and assigns, forever. And I hereby authorize and empower the Union Pacific Railway Company to receive from him, the said ————, any and all money, or unpaid balances due on the within contract to said company, in part consideration for said land, and a full compliance with all the requirements contained in the within agreement or contract, to execute or cause to be executed to him, the said ————, his heirs and assigns, a deed for said land, instead of to me.

"Given under my hand and seal this 28th day of April, A. D. 1887.    C. H. FOLSOM.    [SEAL.]
       "JANE FOLSOM.    [SEAL.]
       "PHEBE M. CRONINGER. [SEAL.]
       "C. A. CRONINGER.    [SEAL.]"

All these assignments were properly acknowledged. The contracts, so assigned, were mailed by the appellees at Lima, Ohio, to one N. S. Crew, their agent, at Omaha, Nebraska, who was engaged in the real estate business, to exchange said contracts (and $550 in cash) for a house and lot in Omaha. Appellees sent the $550 in cash with the contracts. Upon the receipt of said contracts and money, Crew, instead of effecting such exchange, converted said

money to his own use. Crew drew a draft upon one Baldwin, of Cheyenne, and, without the knowledge or consent of the appellees, attached said contracts to said draft. This draft was delivered to the appellants (who were bankers) on May 7, 1887, was discounted by them on that day in the usual course of business for the sum of $600 cash, and was drawn by said Crew upon one Henry Baldwin, and required him to pay to the order of the appellants $600, together with exchange, at sight; and there was attached to said draft, when it was discounted, and when it was forwarded to Cheyenne for collection, the four contracts above mentioned. Mr. Baldwin could not be found, and the draft was returned from Cheyenne unpaid, together with the contracts, to appellants.

It further appears from the evidence that it was the usage and custom in Omaha and in Nebraska to assign such contracts in blank and to deliver them from assignee to assignee without filling up the blanks until such time as the then owner desired to secure a deed from the Union Pacific Railway Company. There is no evidence that the appellants believed Crew to be the owner of the contracts at the time they discounted the draft. Mr. Crew had been reputed to be a man of some means, was a dealer in real estate for himself as well as agent for others, and had had dealings with appellants before; and that the parties to the contracts originally were the Union Pacific Railway Company, party of the first part, and N. S. Crew and G. G. Henry, parties of the second part.

The first question we are called upon to decide is a jurisdictional one. Appellants contend that the appellees have an adequate remedy at law in an action for damages. A suit for damages in a case like this would be wholly inadequate. That a court of equity has jurisdiction to compel the delivery of deeds, muniments of title, and other written instruments, the value of which cannot with any degree of certainty be estimated in money, has been frequently decided by the court.

The principal question in the case is this, Have the appellants, under the facts disclosed by this record, a lien upon the land contracts which are the subject of the action? The appellants claim that the appellees, having assigned these contracts in blank and delivered them to Crew, thereby placed it in his power to pledge them, and there- fore the appellees are estopped from asserting their title against the present holders. The principle of estoppel is often applied in cases where the owner of property clothes another with the apparent right of ownership or absolute disposition, and such person sells or pledges the property to an innocent third person. We do not see how this principle can be invoked in the case at bar. Had Crew's name been inserted in the assignments as assignee, then the doctrine contended for would apply. These assignments in blank did not hold out Crew as the apparent owner. They in no manner indicated any ownership in him. To make a valid assignment of these contracts, it was as necessary to have an assignee as it was the signature of the assignor. Until some one's name was filled in these blanks as assignee the appellees appeared to be and were the real owners. It is not claimed that any name has ever been inserted therein as assignee. Had Crew inserted in the blanks his own name as assignee before presenting them to the bank, then there might be some ground for urging an estoppel against the plaintiffs. These contracts being delivered to appellants assigned in blank, no title passed. (*Ayers v. Probasco*, 14 Kan., 175; *Whitaker v. Miller*, 83 Ill., 381.)

These assignments of the contracts in blank were in violation of the statute of frauds, and void. But it is urged that it was the usage and custom in Omaha to assign such contracts in blank. The appellees live in Ohio and do not appear to have had any knowledge of such custom. However such usage does not overcome the requirements of the statute of frauds. (*Smith v. Clarke et al.*, 7 Wis., 551;

*Cranwell v. Ship*, 15 La. An., 436; *Bowen v. Newell*, 8 N. Y. [4 Selden], 190.)

These contracts were for the sale of real estate and are not in any manner similar to land warrants which may be assigned in blank. Land warrants are personal property and do not purport to convey any interest in lands. It is equally true that the rule that governs the transfer of commercial paper, certificates of shares, warehouse receipts, and bills of lading does not apply to the sale of an interest in real estate.

Most of the cases cited in brief of counsel for appellants on the question of estoppel relate to personal property, hence have but little application here.

The case of *Smith v. Clarke et al.*, 7 Wis., 551, is very similar to the one at bar. In that case Smith and Power owned several hundred school land certificates which, according to the custom there, were assigned in blank and duly acknowledged. They were left with Power that he might make a list of them. Power without Smith's consent pledged all of them to Clarke, who took them in good faith, believing that Power was the owner. Cole, J., speaking for the court, observes: "Undoubtedly the certificates can be sold and transferred by an assignment in writing, like any contract for the sale and conveyance of real estate, and although the custom may be, as testified to by the assistant chief clerk of the school and university land office, Charles R. Gleason, to have the party to whom the certificate is issued sign and acknowledge an assignment to the same, leaving the assignee's name in blank, and then pass the certificate from party to party without further assignment, yet this practice fails to establish the negotiable or *quasi*-negotiable quality claimed for them upon this argument. The certificates in controversy in this cause being, in their legal character, contracts for the sale of real estate, and belonging to the respondents Smith and Power, it follows that the transfer and delivery of them

by Power to the appellants as security for the payment of his individual debt could not in any way affect the right or bind the interest of the respondent. The appellants had an undoubted right to retain, as security for the indebtedness of Power to them, the certificates to the extent of Power's interest in them and no further." (See *Whitney v. Bank,* 7 Wis., 620.)

In our view the appellees did not transfer any interest or property by the delivery of the contracts with the blank assignments thereon; that these assignments did not clothe Crew with *indicia* of title, and that the appellees are not estopped from asserting their ownership to the contracts.

The decree of the district court was right and is affirmed.

DECREE AFFIRMED.

THE other judges concur.